PENNSYLVANIA GLASS SAND
CORPORATION, Appellant,

v.

CATERPILLAR TRACTOR
COMPANY, Appellee.

No. 80–2389.

United States Court of Appeals,
Third Circuit.

Argued Feb. 25, 1981.

Decided June 30, 1981.

Rehearing Denied July 24, 1981.

Christopher C. Fallon, Jr., Stephen Cozen (argued), Cozen, Begier & O'Connor, Philadelphia, Pa., for appellant.

Theodore W. Flowers, Lawrence T. Bowman (argued), White & Williams, Philadelphia, Pa., for appellee.

Before ADAMS, ROSENN and HUNTER, Circuit Judges.

OPINION OF THE COURT

ADAMS, Circuit Judge.

In litigation involving an alleged defective product, the tort theory of products

liability, derived from § 402A of the Restatement (2d) of Torts, often overlaps with the contract theory of warranties, embodied in §§ 2–314 and 2–315 of the Uniform Commercial Code. This appeal presents the question of which types of defects or injuries are to be committed to the principles and policies of tort law, and which are to be relegated to the realm of contract. Since both parties agree that Pennsylvania law governs this diversity suit, we must consider whether Pennsylvania courts would classify damage to a product, allegedly caused by an unreasonably hazardous design defect, as "economic loss" or as physical property damage. We must then decide whether Pennsylvania would permit the purchaser of the defective product to recover for this type of damage in an action founded solely on tort theories of products liability and negligence. The district court regarded the damage in this case as economic loss, and held that such loss could not be recovered in tort under Pennsylvania law. We conclude that the damage should be categorized as physical injury and that Pennsylvania would allow a tort recovery in this situation. We therefore vacate the judgment of the district court, and remand.

## I.

Pennsylvania Glass Sand Corporation (PGS) initiated this diversity action against Caterpillar Tractor to recover damages it incurred as a result of a fire in a front-end loader purchased in 1971 from the manufacturer, Caterpillar.

The loader did not come equipped with a system to suppress or extinguish fires. In addition, the operating instructions were silent regarding the steps or precautions that should be taken in the event a fire occurred in the loader's hydraulic system.

For approximately four years, PGS used the loader daily at its quarry in Mapleton, Pennsylvania, without incident. Throughout this period of heavy use the loader did not evidence any defects of quality or other problems that would render the machine unfit in any way for its intended purpose. On September 20, 1975, however, while the machine was in operation, a fire suddenly broke out in the front portion near the hydraulic lines. The operator hastily evacuated the machine, but neglected to turn off the motor. Consequently, hydraulic fluid continued to fuel the fire, and the conflagration quickly spread. As a result of the fire the loader was severely damaged. PGS incurred expenses of approximately $170,000 for repairing the machine and for securing a temporary replacement. In the course of repairing the loader PGS outfitted it with automatic fire suppression equipment, including instructions to guide operators in the event of fire.

In June, 1979, PGS filed this suit in federal court against Caterpillar, seeking as damages the amount spent on repair and replacement. The complaint advanced theories of negligence and strict tort liability under § 402A of the Restatement (2d) of Torts.[1] PGS contends that Caterpillar's design of the loader was defective. It further alleges that Caterpillar sold the loader in a hazardously defective condition, because the machine was not equipped with a fire suppression system, or with adequate warnings of the steps to be taken if a fire occurred. PGS also asserts that had the loader been so

1. Section 402A of the Restatement (2d) of Torts provides:

Special Liability of Sellers of Products for Physical Harm to User or Consumer.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property, is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Pennsylvania adopted this provision in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966).

equipped, the fire would have been extinguished promptly, and the resulting damage would have been minimal.[2]

There is no allegation that the defect caused the fire; rather, the theory of PGS is that the faulty design enhanced the injury stemming from the accidental fire. This defective design theory is a recognized basis of recovery in tort law, grounded on the premise that a manufacturer's failure to provide safety devices or other elements of a safe design may create an unreasonable risk of harm within the meaning of § 402A. *See, e. g., Heckman v. Federal Press Co.*, 587 F.2d 612, 617 (3d Cir. 1978). As part of the duty imposed by § 402A to market products free of unreasonably hazardous conditions, a manufacturer may be obligated to take reasonable steps to design and produce a product that will minimize the injuries flowing from unavoidable accidents. *See, e. g., Huddell v. Levin*, 537 F.2d 726, 735 (3d Cir. 1976); *Dawson v. Chrysler Corp.*, 630 F.2d 950 (3d Cir. 1980), cert. denied, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981); *Wagner v. International Harvester Co.*, 611 F.2d 224, 230 (8th Cir. 1979).

Caterpillar moved for summary judgment, asserting that the items for which PGS sought damages—repair and replacement costs—constituted economic loss, and that such loss was not recoverable in tort. In addition, Caterpillar claimed that its liability was limited by the express warranty that had accompanied the loader. The warranty confined the purchaser's remedy to replacement of defective parts, and specifically excluded recovery for economic loss.

The district court granted summary judgment in favor of Caterpillar, reasoning that Pennsylvania courts would follow the evolving majority view that purely economic losses are encompassed within the policy of warranty law and therefore should not be recoverable in tort actions. Thus, the district judge concluded that the plaintiff could not succeed in its claim as a matter of law. Under this approach, it was unnecessary for the court to consider the effect of Caterpillar's warranty in limiting its liability.

## II.

In this appeal, PGS urges that the injury it suffered was not economic loss. Rather, PGS maintains that it sustained physical injury to its property occasioned by a catastrophic event. It then contends that Pennsylvania law clearly permits recovery in tort actions for such physical injury.

No court in Pennsylvania has specifically addressed whether accidental injury to the defective product itself should be regarded as an economic loss recoverable only in a contract warranty action. There is, however, dicta from the Pennsylvania Supreme Court that bears on this question. Moreover, decisions from lower Pennsylvania courts have permitted tort recovery in analogous situations, although they do not discuss the contract versus tort implications of such recovery. In the absence of an authoritative pronouncement from the state's highest court, the task of a federal tribunal is to predict how that court would rule. To make this prognostication, we are not inflexibly confined by dicta or by lower state court decisions, although we should look to such statements as indicia of how the state's highest court might decide. See *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 662 (3d Cir. 1980). The policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts may also inform our analysis. In addition, we may consult treatises, the Restatement, and the works of scholarly commentators. *See, e. g., McKenna, supra; Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280, 285 (3d Cir. 1980).

We turn at the outset to the only pronouncement by the Pennsylvania Supreme Court on the subject. In *Kassab v. Central*

---

**2.** PGS did not advance claims under the Uniform Commercial Code for breach of warranty. Indeed, if it had done so, the four year statute of limitations in U.C.C. § 2–725 may well have barred the claims. 12A Penna.Stat.Ann. § 2–725 (Purdon's 1970).

*Soya*, 432 Pa. 217, 246 A.2d 848 (1968), a warranty action by injured consumers, the court accomplished what Dean Prosser has labeled the "fall of the citadel of privity." [3] The plaintiffs in *Kassab* had purchased defective cattle feed that harmed their breeding herd. They instituted an action against the manufacturer, with whom they were not in privity, based on the implied warranty of merchantability expressed in § 2–314 of the U.C.C. The court held that privity of contract was no longer a prerequisite to recovery in this type of action. In reaching this result, the court acknowledged that the recently adopted tort doctrine of products liability expressed in § 402A would permit recovery for the damage to the breeding business. The court expressed disquietude at having the result of lawsuits turn on whether a plaintiff captions the complaint as one sounding in tort or contract, and held that implied warranty law should be coextensive with § 402A in products liability cases. In a footnote the court observed that the language of the Restatement appeared broad enough to cover any harm that could befall the purchaser of a defective product. Using the example of an exploding gas stove, the court opined that under § 402A a plaintiff could recover the cost of repairing or replacing the stove. Noting that replacement costs for the defective product itself are sometimes referred to as "economic loss," the court stated that there "would seem to be no reason for excluding this measure of damages" in a 402A action, "since the defective product is as much 'property' as any other possession of the plaintiff that is damaged as a result of the manufacturing flaw." 432 Pa. at 231 n.7, 246 A.2d 848.

PGS relies heavily on the dicta in this footnote to argue that the Pennsylvania Supreme Court would permit a tort recovery in the present case. *Kassab* was decided at an early stage in § 402A jurisprudence, before courts acquired a fuller appreciation of the proper demarcation between warranty actions and tort cases.[4] To predict whether the Pennsylvania Supreme Court would currently subscribe to the *Kassab* dicta, it is necessary to examine the interrelationship and the policy differences of tort principles and warranty law, as applied to defective products.

### III.

The tort law of products liability has its roots in the contract cause of action for breach of warranty.[5] Initially, individuals personally injured by defective products could reach the manufacturer only under warranty theories. Courts, however, had difficulty meshing the inapposite "intricacies of the law of sales," [6] such as notice and privity, with the plight presented by injured consumers who did not have a direct contractual relationship with the manufacturer. Most states responded, as Pennsylvania did in *Kassab*, by abandoning the privity requirement in implied warranty actions.[7] In doing so, courts began to appreciate the logical difficulties inherent in this procrustean approach, which addressed problems of unsafe conduct with a legal theory premised on receiving the benefit of a bargain. To overcome these logical pitfalls most courts embraced tort law, and the new Restatement section 402A advanced by Dean Prosser, as the analytically sounder basis for dealing with hazardous, as opposed to qualitative, defects.

---

**3.** Prosser, *The Fall of the Citadel*, 50 Minn.L. Rev. 791 (1966); Prosser, *The Assault on the Citadel*, 69 Yale L.J. 1099 (1960).

**4.** Dean Prosser first introduced a draft of § 402A to the American Law Institute (ALI) in 1961, but the ALI did not embrace it until 1964. *See* Titus, *Restatement (Second) of Torts Section 402A and the Uniform Commercial Code*, 22 Stan.L.Rev. 713, 713–14 (1970). Pennsylvania then adopted § 402A as the law of the state in 1966. See note 1, supra.

**5.** Dean Prosser characterized the law of product liability as a "hybrid, having its commencement in contract and its termination in tort." W. Prosser, Law of Torts 648–51 (3d ed. 1964).

**6.** Prosser, *Assault on the Citadel*, supra note 3.

**7.** See Prosser, *Fall of the Citadel*, supra note 3.

Tort law rests on obligations imposed by law, rather than by bargain,[8] and the thrust of § 402A is that as a matter of public policy a duty should be imposed on manufacturers to "warrant" the safety of their products.[9] The gist of a products liability tort case is not that the plaintiff failed to receive the quality of product he expected, but that the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or his property.[10] On the other hand, contract law, which protects expectation interests, provides the appropriate set of rules when an individual wishes a product to perform a certain task in a certain way, or expects or desires a product of a particular quality so that it is fit for ordinary use.[11]

Based on these policies, some courts have concluded that injuries that can be classified as economic loss should not be recoverable in tort.[12] "Economic loss" has been defined as "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." Comment, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages—Tort or Contract?* 114 U.Pa.L.Rev. 539, 541 (1966). This definition of economic loss accords with the policy of warranty law to protect expectations of suitability and quality. The items most frequently sought as damages for unsuitable products are the reduction in value caused by the defect, costs of repair or replacement, and loss of profits.[13]

This does not mean, however, that every prayer for relief that seeks the cost of repairing a damaged product entails the type of economic loss traditionally encompassed within warranty law. Commentators and several courts have carefully distinguished economic loss from physical harm or property damage. The line that is drawn usually depends on the nature of the defect and the manner in which the damage occurred. Defects of quality, evidenced by internal deterioration or breakdown, are assigned to the economic loss category, while

---

**8.** Wade, *Is Section 402A of the Second Restatement of Torts Preempted by the UCC and Therefore Unconstitutional?* 42 Tenn.L.Rev. 123 (1974).

**9.** See *Santor v. A&M Karagheusian, Inc.*, 44 N.J. 52, 64, 207 A.2d 305 (1965).

**10.** Wade, supra note 8, at 127.

**11.** Wade, supra note 8, at 127. The UCC implied warranties of merchantability and fitness for a particular purpose, §§ 2–314 and 2–315, are designed to protect these interests.

**12.** The leading case propounding this approach is *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). The seminal decision adopting the contrary view that economic loss for qualitative defects may be recovered in a tort action is *Santor v. A&M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965).

Whether Pennsylvania would adopt *Seely* or *Santor*, however, is not dispositive in the present case, because of our conclusion that even under the more restrictive liability rule in *Seely*, the damages that PGS seeks may be recovered in tort. See Part V *infra*.

**13.** See Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum.L.Rev. 917, 918 (1966). In applying the definition of economic loss to the situation presented by damage to the defective product itself, the Note observes:

> When the defect causes an accident "involving some violence or collision with external objects," the resulting loss is treated as property damage. On the other hand, when the damage to the product results from deterioration, internal breakage, or other non-accidental causes, it is treated as economic loss. It is also important to distinguish between "direct" and "consequential" economic loss. Direct economic loss may be said to encompass damage based on insufficient product value; thus, direct economic loss may be "out of pocket"—the difference in value between what is given and received—or "loss of bargain"—the difference between the value of what is received and its value as represented. Direct economic loss also may be measured by costs of replacement and repair. Consequential economic loss includes all indirect loss, such as loss of profits resulting from inability to make use of the defective product.

*Id.* at 918 (footnotes omitted).

Pennsylvania courts have not yet had the occasion to define what constitutes "economic loss." There is reason to believe, however, that the state's courts would follow the definition promulgated by the commentators—a definition almost universally adhered to by other courts. *See, e. g., Jones & Laughlin Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280 (3d Cir. 1980).

the loss stemming from defects that cause accidents "of violence or collision with external objects" is treated as physical injury.[14] Tort law traditionally has redressed injuries properly classified as physical harm.[15]

The seminal case that recognized and applied this distinction is *Seely v. White Motor Co.*, 63 Cal.2d 9, 403 P.2d 145, 45 Cal. Rptr. 17 (1965). In *Seely* the owner of a truck sued the manufacturer under a breach of warranty theory, seeking a return of the purchase price and profits lost by virtue of a bouncing defect that rendered the truck unusable in his business of heavy-duty hauling. The plaintiff also sought recovery under § 402A for the costs of repairs incurred when the brakes failed and caused an accident that damaged only the truck. Chief Justice Traynor, writing for the California Supreme Court, distinguished between recovery for the loss of value from a defect in a product, and damage to the product caused by the defect. He declared that the first type of injury constituted

economic loss that was recoverable only under warranty law, because the activity complained of essentially involved a breach of representations of quality or suitability.[16] The court also held that the accident-induced damage to the truck could be redressed under tort principles, because the "doctrine of strict liability in tort should be extended to govern physical injury to plaintiff's property." 45 Cal.Rptr. at 24, 403 P.2d at 152. When the defect is of a type that creates a safety hazard, such as the truck's nonworking brakes, "physical injury to property is so akin to personal injury that there is no reason for distinguishing them." *Id.* (*citing* Prosser, *The Assault on the Citadel*, 69 Yale L.J. 1099, 1143 (1960)). Thus, if the plaintiff in *Seely* could prove that the defective brakes had caused the accident, he could recover the cost of repairing the truck under § 402A.

Courts in most states have followed Seely and have held that economic loss caused by qualitative defects cannot be recovered in a tort action.[17] The nature of the defects at

14. Note, *supra* note 13, at 918. The rationale for this emphasis on accidents is that such situations present a greater safety risk. Comment, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages—Tort or Contract?* 114 U.Pa.L.Rev. 539, 548 n.54 (1966).

15. Dean Prosser has emphatically noted the distinction between economic loss and physical injury:

> There can be no doubt that the seller's liability for negligence covers any kind of physical harm, including not only physical injuries, *but also property damage to the defective chattel itself*, as where an automobile is wrecked by reason of its own bad brakes.... But where there is no accident, and no physical damage, and the only loss a pecuniary one, through the loss of the value or use of the thing sold, courts have adhered to the rule ... that purely economic interests are not entitled to protection against mere negligence.

W. Prosser, Law of Torts § 101, at 665 (4th ed. 1971) (footnotes omitted) (emphasis added).

16. Justice Traynor analyzed the types of risk protected by tort and contract and the policy question of which party should bear these risks:

> The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not

arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone.

45 Cal.Rptr. at 23, 403 P.2d at 151.

17. *See, e. g., Fredonia Broadcasting Corp. v. RCA Corp.*, 481 F.2d 781 (5th Cir. 1973) (Texas law; strict liability); *Bright v. Goodyear Tire & Rubber Co.*, 463 F.2d 240 (9th Cir. 1972) (California law; intentional or reckless tort); *Southwest Forest Indus., Inc. v. Westinghouse Elec.*

issue in these cases invariably was qualitative, i. e., the products were not fit for their intended use. For example, in *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280 (3d Cir. 1980), roofing material that the manufacturer promised would withstand the high wind velocities, extremes of temperature, and heavy precipitation that plagued the area, proved to be peculiarly unsuited to adverse weather conditions, and Jones & Laughlin's plant sustained severe damage when, over the course of time, portions of the roof buckled and blew away. Applying Illinois law, we disallowed a § 402A claim for the repair and replacement costs of the roof, noting that the product's unsatisfactory performance was the sort of problem which warranties were designed to address.[18]

Economic loss frequently involves only damage to the defective product itself, with no attendant injury to persons or other property. It is sometimes difficult to classify the situation in which the product alone is damaged as properly falling within the confines of either tort or contract law.[19] Most courts, however, have attempted to follow the lines suggested by Dean Prosser and by Chief Justice Traynor in *Seely*, by ascertaining whether the damage constitutes physical harm or merely economic loss.

The most comprehensive analysis of this distinction occurs in the case of *Cloud v. Kit Mfg. Co.*, 563 P.2d 248 (Alaska 1977). The Clouds purchased a mobile home that came equipped with polyurethane carpet padding. The padding ignited, and the home caught fire and was severely burned. The court framed the issue as that of the propriety of a strict liability tort claim to redress direct property damage in the absence of personal injuries.

Distinguishing a prior decision[20] in which it had disallowed a tort claim for economic loss caused by a qualitatively deficient mobile home, as one involving a "lemon" rath-

*Corp.*, 422 F.2d 1013 (9th Cir.) (Arizona law; strict liability), *cert. denied* 400 U.S. 902, 91 S.Ct. 138, 27 L.Ed.2d 138 (1970); *Midland Forge, Inc. v. Letts Indus., Inc.*, 395 F.Supp. 506 (N.D.Iowa 1975) (Iowa law; strict liability); *Arizona v. Cook Paint & Varnish Co.*, 391 F.Supp. 962 (D.Ariz.1975) (under law of Arizona, California, Hawaii, Texas, or Alaska economic loss not recoverable in strict liability action), *aff'd*, 541 F.2d 226 (9th Cir. 1976); *Noel Transfer & Package Delivery Serv., Inc. v. General Motors Corp.*, 341 F.Supp. 968 (D.Minn.1972); *Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784 (1978) (negligence); *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279 (Alaska 1976) (strict liability); *Nobility Homes, Inc. v. Shivers*, 557 S.W.2d 77 (Tex. 1977) (strict liability); *Hiigel v. General Motors Corp.*, 190 Colo. 57, 544 P.2d 983 (1975) (strict liability); *Price v. Gatlin*, 241 Or. 315, 405 P.2d 502 (1965) (strict liability); *Inglis v. American Motors Corp.*, 3 Ohio St.2d 132, 209 N.E.2d 583 (1965) (negligence).

Cases following the approach set forth in *Santor, supra,* fn. 12, permitting tort recovery for economic loss include: *Mead Corp. v. Allendale Mut. Ins. Co.*, 465 F.Supp. 355 (N.D. Ohio 1979) (Ohio law; strict liability); *Berg v. General Motors Corp.*, 87 Wash.2d 584, 555 P.2d 818 (1976) (strict liability); *City of La Crosse v. Schubert, Schroeder & Assoc., Inc.*, 72 Wis.2d 38, 240 N.W.2d 124 (1976) (strict liability); *Iacono v. Anderson Concrete Corp.*, 42 Ohio St.2d 88, 326 N.E.2d 267 (1975) (strict liability); *Cova v. Harley Davidson Motor Co.*,

26 Mich.App. 602, 182 N.W.2d 800 (1970) (strict liability).

18. The facts of other economic loss cases also fit into the qualitative defect category. In *Nobility Homes, Inc. v. Shivers*, 557 S.W.2d 77 (Tex.1977), the plaintiffs sought damages for the reduced value of a mobile home that proved to be virtually uninhabitable because of a leaky roof, gapping floor seams and improperly installed doors and windows. Similarly, in *Alfred N. Koplin & Co. v. Chrysler Corp.*, 49 Ill.App.3d 194, 7 Ill.Dec. 113, 364 N.E.2d 100 (1977), the plaintiff sought repair costs incurred to correct air conditioners that failed to perform properly.

See also *Long v. Jim Letts Oldsmobile, Inc.*, 135 Ga.App. 293, 217 S.E.2d 602 (1975) (buyer may not recover reduced value of car that "ran hot" in tort action); *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279 (Alaska 1976) (defects made trailer unsuitable as home; court disallows tort recovery); *Two Rivers Co. v. Curtiss Breeding Svc.*, 624 F.2d 1242 (5th Cir. 1980) (Texas law).

19. With some products, an "accident" may not be clearly distinguishable from internal deterioration. *See* Comment, *supra* note 14, at 548 n.54. *See* Wade *supra* note 8, at 129; Columbia Note, *supra* note 13, at 918.

20. *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279 (Alaska 1976).

er than an unsafe product, the Alaska court held that physical injury to property caused by hazardous defects should be treated similarly to personal injuries in products liability litigation. 563 P.2d at 250. The policy underpinning strict liability is that a manufacturer should bear the risk of unsafe products it puts on the market, rather than the injured parties who are unable to protect themselves. *Id.; Seely, supra*, 45 Cal. Rptr. at 23, 403 P.2d at 151. The court reasoned that this policy of risk allocation is equally applicable when the purchaser's property is injured, because the purchaser is similarly unable to protect himself from the hazardous product. Moreover, the court did not think that the manufacturer's responsibility to market safe products should depend on the fortuity of whether or not a person escapes injury. *Id.* at 250–51. The court then suggested that the demarcation between economic loss and property damage must be made with reference to the policies underlying the U.C.C. warranty provisions. Thus, it noted, deterioration and other defects of poor quality should be considered economic loss, whereas "sudden and calamitous damage will almost always result in direct property damage" recoverable in tort. *Id.* at 251.[21] Finally, the court

found that the damage to the trailer caused by the accidental fire constituted physical property damage.

Several principles and trends may be distilled from this analysis of policy and the decisions of other courts. Although strict liability in tort developed out of the law of warranties, the courts of most states have recognized that the principles of warranty law remain the appropriate vehicle to redress a purchaser's disappointed expectations when a defect renders a product inferior or unable adequately to perform its intended function. *See* note 17, *supra*. These courts have classified the damages consequent to qualitative defects, such as reduced value, return of purchase price, repair and replacement, or lost profits, as economic loss, and have relegated those who suffer such commercial loss to the remedies of contract law.

On the other hand, almost all courts have adopted the view that the benefit-of-the-bargain approach of warranty law is ill-suited to correct problems of hazardous products that cause physical injury.[22] Manufacturers are better able to bear the risk or to take action to correct flaws that pose a danger. Accordingly, tort law imposes a

---

**21.** The court cited Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum.L. Rev. 917 (1966).

**22.** Only one state of which we are aware has explicitly rejected the holdings of *Seely* and *Cloud* that calamitous damage to the product itself, caused by a hazardous defect, is recoverable in tort. *In Mid-Continent Aircraft v. Curry County Spraying Service*, 572 S.W.2d 308 (Tex.1978), the Texas Supreme Court ruled that when the defective product alone is damaged, recovery may be had only in a contract action. The court offered little reasoning for this blackletter rule, except to note that the law of strict liability initially developed to protect consumers for personal injuries. The dissent analyzed the policies underlying tort and contract law, and concluded that tort policy reaches property damage caused by hazardous defects. Concluding that the defective airplane involved in the suit constituted an unreasonably dangerous product within the meaning of § 402A, the dissent would have permitted tort damages for the plane, which was destroyed in a crash when its gear crankshaft malfunctioned.

There are also two analogous decisions denying tort recovery for property damage: Nebras-

ka has a unique version of strict tort liability, allowing recovery solely for injuries "to human beings rightfully using that product." *Hawkins Construction Co. v. Matthews Co.*, 190 Neb. 546, 209 N.W.2d 643 (1973). A federal district court, without explanation, interpreted South Carolina law to preclude application of § 402A to the defective product itself. *Cooley v. Salopian Indus., Ltd.*, 383 F.Supp. 1114 (D.S.C. 1974).

On the other hand, cases following the *Seely-Cloud* approach to physical injury include: *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182 (1965); *Weber v. Fidelity & Cas. Ins. Co.*, 259 La. 599, 250 So.2d 754 (1971); *State Stove Mfg. Co. v. Hodges*, 189 So.2d 113 (Miss.1966), *cert. denied*, 386 U.S. 912, 87 S.Ct. 860, 17 L.Ed.2d 784 (1967); *Rosenau v. City of New Brunswick*, 51 N.J. 130, 238 A.2d 169 (1968) (follows the aspect of *Seely* dealing with physical harm to property, noting that economic loss issue presented in *Santor* was not implicated); *Mike Bajalia, Inc. v. Amos Construction Co.*, 142 Ga.App. 225, 235 S.E.2d 664 (1st Div. 1977).

duty on manufacturers to produce safe items, regardless of whether the ultimate impact of the hazard is on people, other property, or the product itself.

In cases such as the present one where only the defective product is damaged, the majority approach is to identify whether a particular injury amounts to economic loss or physical damage. In drawing this distinction, the items for which damages are sought, such as repair costs, are not determinative. Rather, the line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose. These factors bear directly on whether the safety-insurance policy of tort law or the expectation-bargain protection policy of warranty law is most applicable to a particular claim.

## IV.

We now return to Pennsylvania decisions to predict whether that state will extend the dicta in *Kassab* to allow recovery in tort at least to the extent permitted in *Seely* and *Cloud*, or will choose instead to follow the minority approach of treating all claims by purchasers of a damaged product as contract disputes.

The thrust of the dicta in *Kassab* was that hazardous products which cause damage to themselves are analytically encompassed within the policy of tort law to the same extent as dangerous items that also accidentally maim people or other property.[23] This recognition that tort principles are the proper body of law to apply to hazardous defects,[24] is consistent with the majority approach embodied in Chief Justice Traynor's decision in *Seely*. It is also compatible with the respective policies of tort and contract law. We therefore believe that the Pennsylvania Supreme Court would draw a distinction between the type of injury to a defective product that constitutes mere economic loss, and the type of injury that amounts to the sort of physical harm traditionally compensable in tort.

Recent decisions by lower courts in Pennsylvania, and by this Court sitting in diversity, appear to implement this distinction. One such case is *Cornell Drilling Co. v. Ford Motor Co.*, 241 Pa.Super. 129, 359 A.2d 822 (1976), which dealt with an occurrence similar to the accident that PGS suffered in the present case. In *Cornell Drilling* the commercial plaintiff purchased a truck from the defendant, and after a few days of use the truck caught fire while unoccupied. Since no individual was injured, plaintiff sought recovery under § 402A only for the property damage to the defective truck. Without discussing the question of economic loss, the court allowed a tort recovery for the physical harm to the truck. The absence of any scrutiny devoted to the economic loss issue is not surprising, inasmuch as tort actions to recover for the consequences of defects that pose a fire hazard are commonplace. In *Cornell Drilling* the court relied on *MacDougall v. Ford Motor Co.*, 214 Pa.Super. 384, 257 A.2d 676 (1969). *MacDougall* upheld a verdict for the plaintiff in a § 402A action, awarding recovery for damage to a defective automobile. The car's steering mechanism had failed while plaintiff was driving on the highway, but fortunately only the car was damaged. Once again, the court appeared to regard a tort recovery for damage to the defective product as nothing extraordinary.

This Court had occasion to consider how Pennsylvania law would balance "the competing gravitational pulls of the U.C.C. and

---

**23.** The Pennsylvania court's concern with hazardous products is illustrated by its use of an exploding stove as the example supporting its suggestion that damage to the stove itself should be recoverable in tort actions. The dicta in *Kassab* was therefore not addressed to the considerations present when the defect is merely one of quality or suitability.

**24.** Other members of the Pennsylvania Supreme Court offered statements in other cases which indicate they viewed the proper dividing line between warranty law and § 402A as dependent on the presence of safety hazards posing a danger to persons or property. *See, e. g., Miller v. Preitz*, 422 Pa. 383, 412–13, 221 A.2d 320 (1966) (Jones, J., concurring and dissenting); *Webb v. Zern*, 422 Pa. 424, 428, 220 A.2d 853 (1966) (Eagen, J., concurring).

the law of torts" surrounding claims for damage to a defective product in *Posttape Associates v. Eastman Kodak Co.*, 537 F.2d 751 (3d Cir. 1976).[25] Plaintiff, a documentary filmmaker, sought to recover the increased costs and lost profits it suffered when film supplied by defendant turned out to be severely scratched. A jury found Kodak liable under § 402A on the ground that the film had been in a "defective condition unreasonably dangerous to the property of plaintiff." *Id.* at 754. We reversed, reasoning that the defect presented a problem of quality and fitness for intended use, rather than one of unreasonable dangerousness. Thus, § 402A, which is addressed only to defects hazardous to individuals or to property, was not applicable. The Court then discussed the economic loss issue and Justice Traynor's opinion in *Seely*, and noted that § 402A was of doubtful utility "in a commercial setting when the damages are consequential and arise from a non-dangerous impairment of quality of the product." Id. at 755. The Court observed that the provisions of the U.C.C. were better tailored to such a situation.

Although a direct resolution of the issue presented in the case at hand was not necessary to the decision in *Posttape*, implicit in that opinion is a recognition of the difference between claims for economic loss and for physical damage to the defective product. In addition, the opinion alluded to the policy distinctions that make the U.C.C. the proper vehicle for redressing losses occasioned by impairment of quality, and make § 402A the superior device for rectifying the consequences of dangerously defective products. *Id.* at 755.

The decision in *Posttape* is therefore consistent with the demarcation between tort law and contract principles adopted in *Seely* and *Cloud*, and suggested by Dean Prosser and other commentators. To the extent the Pennsylvania Supreme Court would treat *Posttape* as a relevant precedent along with

the decisions in other jurisdictions, *Posttape* underscores our conclusion that Pennsylvania would classify damage to a defective product resulting from an unreasonably dangerous condition as physical injury compensable under § 402A.

## V.

■ Turning to the circumstances alleged by PGS, we must decide whether Pennsylvania courts would consider the claimed damage to the loader as economic loss or physical harm.

Caterpillar argues that the injury amounts to economic loss because only the defective product was harmed and damages are sought solely for the costs of repair and temporary replacement. They cite the portion of this Court's definition of economic loss in *Jones & Laughlin, supra*, where we mentioned "damages for inadequate value, costs of repair and replacement of the defective product." 626 F.2d at 284. *Jones & Laughlin*, however, is distinguishable, since it involved a defect of quality and suitability.

As we discussed previously,[26] claims for damage to the defective product may be cognizable in tort law, and the items for which damages are sought are not determinative of the line between tort and contract. Rather, the nature of the defect and the type of risk it poses are the guiding factors. Here, the damage to the front-end loader was the result of a fire—a sudden and highly dangerous occurrence. *Cf. Cloud v. Kit Mfg. Co.*, 563 P.2d 248 (Alaska 1977); *Cornell Drilling Co. v. Ford Motor Co.*, 241 Pa.Super. 129, 359 A.2d 822 (1976) (cases allowing tort claims for products damaged by sudden, unexplained fires). Moreover, the alleged defect—a faulty design that failed to contain the fire and led to greatly enhanced damage—constitutes a safety hazard that posed a serious risk of harm to people and property. Thus, the complaint brought by PGS appears to fall

---

**25.** The decision in *Keystone Aeronautics Corp. v. R. J. Enstrom Corp.*, 499 F.2d 146 (3d Cir. 1974), also indicates that tort recovery may be proper when the defective product is damaged. In *Keystone* a defective helicopter was damaged in a crash. The Court indicated that re-

covery under § 402A would be permissible—the only potential hurdle in the case was a contract clause limiting liability.

**26.** See Part III, *supra*.

within the policy of tort law that the manufacturer should bear the risk of hazardous products. Moreover, as part of the duty to provide safe products, a manufacturer may be obligated to install safety devices that minimize the risk of augmented injuries. See *Huddell v. Levin*, 537 F.2d 726 (3d Cir. 1976).

In contrast, the complaint does not appear to implicate the policies of warranty law. Significantly, PGS has not alleged that the loader was of poor quality or was otherwise unfit to perform its job. To the contrary, PGS asserts that the machine operated without incident for several years. Thus, PGS does not seek to protect its expectation interests in the equipment's suitability or to secure the benefit of its bargain for a front-end loader. It received the workable loader that it sought; however, the machine allegedly turned out to contain a hazardous defect. The law does not require purchasers to bargain for a safe product, because the manufacturer has a legally imposed duty to provide such an item.

For the foregoing reasons, it would appear that Pennsylvania law would not treat the damage in this case as economic loss recoverable solely in a warranty action. Rather, we believe that Pennsylvania courts would regard the injury stemming from the allegedly hazardous defect in the loader as the sort of physical injury to property compensable under tort law.

Caterpillar counters that to permit a tort recovery in this case would be to undermine the U.C.C. To substantiate their claim that the U.C.C. should govern, Caterpillar points out that the parties are equally powerful commercial entities that entered into a transaction at arm's length. Any suggestion that commercial purchasers of hazardously defective products must resort exclusively to U.C.C. remedies and are barred from recovery in the realm of tort law is at odds with the policies underlying tort and contract principles. As discussed above, contract law is largely inapposite to the problem of hazardous defects, because purchasers are not expected to bargain for a safe product—they have a right to such a purchase correlative to the manufacturer's duty to provide safe equipment. Moreover, Pennsylvania law disapproves of technical or rigid distinctions between contract cases and tort cases. *See, e. g., Hahn v. Atlantic Richfield Co.*, 625 F.2d 1095 (3d Cir. 1980); *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968). Accordingly, a differentiation between the cases that must be brought under the U.C.C. and those that may proceed in tort, based on the nature of the plaintiff, would not comport with the tenor of Pennsylvania decisions.

We therefore conclude that the Pennsylvania courts would reject the minority rule [27] that the U.C.C. controls cases between commercial entities. We predict that the state's courts would adhere to the majority view that claims for damage caused by hazardous conditions may be brought under tort law, regardless of whether the plaintiff is an ordinary consumer or a commercial consumer. Permitting tort recovery in such situations, even when the only injury is to the defective product, does not nullify or supersede the warranty provisions of the U.C.C.,[28] because the Code and § 402A protect entirely distinct interests against different kinds of conduct.[29]

Caterpillar's final contention is that the warranty that accompanied the loader defines the exclusive remedy available to the purchaser, and therefore shelters it from the tort liability that PGS seeks to impose.

In *Keystone Aeronautics Corp. v. R. J. Enstrom Corp.*, 499 F.2d 146 (3d Cir. 1974), this Court held that the law of Pennsylvania permits parties contractually to disclaim responsibility for any potential liability under § 402A, but they must expressly spell out their intention to do so. We declared in *Posttape v. Eastman Kodak*, 537 F.2d 751

---

**27.** *See Mid-Continent Aircraft v. Curry County Spraying Svc.*, 572 S.W.2d 308 (Tex.1978); note 22, *supra*.

**28.** Inasmuch as the alleged defect did not make the loader of unmerchantable quality or otherwise render it unfit for its particular purpose, it is not even evident that PGS could have asserted a claim for breach of the U.C.C. warranties contained in sections 2–314 and 2–315.

**29.** *See* Wade, *supra* note 8, at 127.

(3d Cir. 1976), that Pennsylvania law also tolerates agreements limiting tort damages. To determine whether the Caterpillar warranty absolves the seller in this case would require an investigation into the meaning of the contractual provision. Because we have no record or factual findings to guide our resolution whether the warranty actually had the effect that Caterpillar ascribes to it, the task of clarifying the warranty is for the trial court, at least in the first instance.

### VI.

Since the type of damages that PGS seeks may be recovered in a tort action under Pennsylvania law, the award of summary judgment to Caterpillar was improper. PGS should be afforded an opportunity to prove the elements of its tort cause of action for defective design. The question of the effect of the Caterpillar warranty on tort liability must also be explored by the factfinder. The judgment of the district court will therefore be vacated, and the matter remanded for action consistent with this opinion.