## Cumberland Valley Joint School Authority v. Haldeman, Inc.

*Mark S. Silver,* for plaintiffs.

*James D. Flower,* for defendant Leroy Roofing Company.

*Edward E. Knauss,* for defendant Gibson-Homans Company.

SHUGHART, *P.J.,* June 17, 1982—On October 19, 1970, Cumberland Valley Joint School Authority (Cumberland Valley) entered into a written contract with M. L. Haldeman & Son, Inc. (Haldeman) for the construction of Cumberland Valley Senior High School, including a gymnasium. The contract specified that the gymnasium roof was to be domed and that it was to be coated with "Siliconed Asbestolite." Thereafter, Haldeman contracted with Leroy Roofing Company (Leroy) to install the gymnasium roof. Leroy subsequently purchased the necessary "Siliconed Asbestolite" from The Monroe Company, Inc. (Monroe) and applied it to the gymnasium roof from May 9, 1972, to July 15, 1972.

On or about November 2, 1973, Cumberland Valley discovered that the "Siliconed Asbestolite" was defective and that as a result the "roof coating

. . . was inelastic, became extremely brittle, cracked, blistered, failed to remain watertight, leaked and allowed water to penetrate and damage the surfaces below said coating." The "Siliconed Asbestolite" was thereafter removed, water damaged surfaces were repaired, and the roof coating was replaced, at a cost of $62,950. After negotiations broke down, Cumberland Valley commenced this action in trespass and assumpsit against Haldeman, Leroy, and Monroe by filing a praecipe for a writ of summons on June 28, 1978.

A complaint was filed on March 13, 1979. It consists of nine counts, the first four of which are against Monroe and are our present concern. Count I is in trespass and consists of a Restatement, 2d, Torts §402A cause of action. Counts II through IV are in assumpsit and consist of causes of action for breach of express and implied warranties.

Monroe filed an answer with new matter on August 22, 1979, wherein it raised the statute of limitations as a bar to Cumberland Valley's claims. A reply to the new matter was filed on March 31, 1981.

Prior to Cumberland Valley's reply to the new matter, Monroe joined Gibson-Homans Company (Gibson-Homans) as an additional defendant by praecipe filed May 11, 1979. On May 30, 1979, Monroe filed its complaint against Gibson-Homans alleging that Gibson-Homans, as manufacturer of the "Siliconed Asbestolite," is alone liable, jointly and severally liable, or liable over to Monroe for the causes of action declared upon by Cumberland Valley.

On March 25, 1982, Monroe filed a motion for summary judgment on the four counts against it. Gibson-Homans had previously filed a motion for

summary judgment on March 12, 1982. Since Gibson-Homans' motion is based on theories identical to those raised by Monroe, the decision reached with respect to Monroe's motion for summary judgment will be dispositive of Gibson-Homans' motion. We will therefore limit our discussion to Monroe's motion.

Monroe contends that a 402A cause of action will not lie because Cumberland Valley's losses were strictly economic and because the "Siliconed Asbestolite" was not unreasonably dangerous to the person or property of Cumberland Valley.

There is ample authority that section 402A of the Restatement, 2d, Torts has no application where plaintiff's damages are solely economic as opposed to physical injury to person or property. See Pennsylvania Glass Sand Corporation v. Caterpillar Tractor Company, 652 F. 2d 1165, 1170 n.17 (3rd Cir. 1981). Jurisdictions following this view have adopted the position espoused by Justice Traynor in Seely v. White Motor Company, 63 Cal. 2d 9, 403 P. 2d 145, 45 Cal. Rptr. 17 (1965). The contrary view—that solely economic loss may be recovered in a 402A action—is found in Santor v. A & M Karagheusian, Inc., 44 N.J. 52, 207 A. 2d 305 (1965), but this is clearly the minority position.

The Pennsylvania Supreme Court has yet to answer the question of whether a distinction should be drawn between economic loss and physical injury or property damage for the purpose of 402A jurisprudence. The Third Circuit Court of Appeals has considered this question, however, and it concluded in Pennsylvania Glass Sand, supra, that our Supreme Court would draw such a distinction. We agree with the reasoning set forth in Pennsylvania Glass Sand and therefore conclude that a 402A ac-

tion will not lie when the losses suffered are strictly economic. It must therefore be determined whether the losses incurred by Cumberland Valley as the result of the defective "Siliconed Asbestolite" are economic, and therefore not recoverable in tort, or whether they may be considered property damage and within the purview of 402A.

To properly characterize the losses in the instant case we must examine the alleged defect and how the damages occurred. Pennsylvania Glass Sand, supra. "Defects of quality, evidenced by internal deterioration or breakdown, are assigned to the economic loss category, while loss stemming from defects that cause accidents 'of violence or collision with external objects' is treated as physical injury" Id. at 1169-70. If there is physical injury to plaintiff's property, then a 402A action will lie. Seely v. White Motor Company, supra. In Jones & Laughlin Steel Corporation v. Johns' Manville Sales Corporation, 626 F. 2d 280 (3rd Cir. 1980), the court, applying Illinois law, defined economic loss as "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury *or damage to other property*." Id. at 284 (quoting Alfred N. Kaplin & Co. v. Chrysler Corp., 49 Ill. App. 3d 194, 7 Ill. Dec. 113, 64 N.E. 2d 100 (1977) ). (Emphasis supplied.)

In the case at bar, Cumberland Valley pleaded in paragraph 24 of its complaint that there was damage to surfaces below the "Siliconed Asbestolite" roof coating. Monroe has done nothing to dispute this allegation. Since damage to the subsurface involves property other than the roof coating itself, the cost to repair and replace the subsurface is more

than mere economic loss. Hence, Cumberland Valley may seek recovery through a 402A cause of action.

The memorandum opinion filed in Perloff Brothers, Inc. v. The Celotex Corporation, 295 Pa. Superior Ct. 605, 437 A. 2d 1027 (1981), relied upon by defendant, does not require a different result. A careful reading of the Perloff opinion reveals that the only damage in that case was to the roof membrane itself. In the instant case, plaintiff has averred that there was damage to surfaces below the roof membrane. There is therefore a significant factual distinction and Perloff is not dispositive of the 402A issue.

Defendant also argue that a 402A action is not maintainable because the "Siliconed Asbestolite" was not in a defective condition unreasonably dangerous to plaintiff.

In Berkebile v. Brantly Helicopter Corporation, 462 Pa. 83, 337 A. 2d 893 (1975), the court stated that the only purpose of the "unreasonably dangerous" qualification in 402A is to prevent a manufacturer from being held liable where its product is not defective. If plaintiff proves that a product is defective and that the defect caused his injury, then he has proved that as to him the product was unreasonably dangerous. Id. In Azzarello v. Black Brothers Company, Inc., 480 Pa. 547, 391 A. 2d 1020 (1978), the court reaffirmed Berkebile when it stated that "the words, 'unreasonably dangerous' have no independent significance and merely represent a label to be used where it is determined that the risk of loss should be placed upon the supplier [of the product]." Id. at 556, 391 A. 2d at 1025. See also Cronin v. J.B.E. Olson Corporation, 8 Cal. 3d

121, 501 P. 2d 1153, 104 Cal. Rptr. 433 (1972). Thus, "the phrases 'defective condition' and 'unreasonably dangerous' as used in the Restatement formulation are terms of art invoked when strict liability is appropriate." Azzarello at 558, 391 A. 2d at 1026.

We believe that this is a proper case to invoke strict liability. The "Siliconed Asbestolite" was placed in the stream of commerce allegedly lacking the essential ingredients to make it perform as a suitable water barrier. Indeed, the "Siliconed Asbestolite" broke down within a year and a half after it was installed. Under these circumstances, it is appropriate for the manufacturer and distributor of this product to bear the risk of loss if plaintiff is able to prove its allegations that the product was defective and that its property was thereby injured.

We conclude that defendant's motion for summary judgment as to Count I of plaintiff's complaint must be denied.

It must next be determined whether plaintiff's breach of warranty claims, Counts II through IV, are time barred. It is undisputed that the statute of limitations applicable in the instant case is four years, as provided by section 2725 of the Uniform Commercial Code of November 1, 1979, P.L. 255, 13 Pa.C.S.A. §2725.

The statute begins to run when the cause of action accrues. 13 Pa.C.S.A. §2725(a). Section 2725(b) specifies when the cause of action accrues. It provides:

A cause of action accrues when the breach occurs, *regardless of the aggrieved party's lack of*

*knowledge of the breach.* A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

13 Pa.C.S.A. §2725(b) (Emphasis supplied.)

The last of the "Siliconed Asbestolite" was delivered on July 15, 1982. Because this is the date the goods were tendered, it is also the date upon which the breach of warranty occurred. Hence, by the literal terms of section 2725, plaintiff was required to commence its action within four years of that date or be forever barred. Cumberland Valley's suit was not commenced until June 28, 1978. It is therefore not timely.

In an effort to avoid the obvious, Cumberland Valley argues that the statute did not begin to run until August 20, 1974. Its argument runs as follows: The defect was not discovered until November 2, 1973; from that date, plaintiffs corresponded with Monroe in an effort to amicably resolve the problem; on August 20, 1974, Monroe finally refused to be of assistance; thus, it was then that plaintiff had knowledge that nothing was to be done to correct the problem; and therefore, plaintiff maintains, the four years did not begin to run until August 20, 1974. This argument must be rejected.

First of all, section 2725 clearly states that lack of knowledge of the breach is irrelevant. Therefore, any argument premised on the fact that the defect was not discovered until November 2, 1973, may be

rejected as of course.[1] But even if Cumberland Valley is gratuitously given the benefit of the November 2, 1973, discovery date, its suit is still late, having not been commenced until June 28, 1978.

Recognizing this, plaintiff then argues, without citing any authority, that the statute did not begin to run until August 20, 1974, when Monroe finally refused to repair or replace the roof coating. Although not clearly articulated, it appears that the thrust of plaintiff's argument is that Monroe waived the statute of limitations when Monroe corresponded with plaintiff regarding the leaky roof. It is well settled, however, that negotiations toward an amicable resolution of a dispute are insufficient in themselves to preclude a party from asserting the statute of limitations. See Nesbitt v. Erie Coach Company, 416 Pa. 89, 204 A. 2d 473 (1964); Gabe et al. v. Church et al., 63 Del. 417 (1976). Rather, "[t]o establish a waiver of or estoppel to assert the statute of limitations the plaintiff must show that through fraud or concealment, the defendant caused the plaintiff to relax his vigilance or deviate from his right of inquiry." Id. at 419. There is no such fraud or concealment asserted or apparent in the case at bar.

Nor can it be concluded that this correspondence constituted an acknowledgment by Monroe that it owed Cumberland Valley a debt such that Monroe would be barred from raising the statute of limita-

---

1. Cf. Med-Mar, Inc. v. Dilworth et al., 214 Pa. Superior Ct. 402, 257 A. 2d 910 (1969) (statute begins to run when breach of contract is discovered or reasonably should have been discovered).

tions. In this regard, Weiner v. Armstrong Cork Co., 7 D. & C. 3d 470 (Lawrence 1978), presents a situation similar to the case at bar. In that case, Weiner purchased floor covering from Armstrong on February 28, 1972. In December of 1975 the floor covering began to discolor. Weiner immediately notified Armstrong of this and thereafter correspondence was exchanged between the parties in which Armstrong stated that it would grant Weiner an adjustment in the purchase price. Weiner, however, demanded that the floor be replaced. When Armstrong refused, Weiner filed suit in November of 1977 for breach of express and implied warranties. After considering section 2-725 of the Uniform Commercial Code (now 13 Pa.C.S.A. §2725), the court stated that unless the statute of limitations was tolled, Weiner's action was not timely.

The court considered, inter alia, whether Armstrong waived the statute of limitations by its letters of March 25 and June 3, 1976. In this regard, the court held: the letters [cannot] be considered as an acknowledgment sufficient to bar the statute. ' "To toll the statute of limitations there must be a clear and unequivocal acknowledgment of the debt and a specification of the amount or a reference to something by which the amount can be definitely ascertained, coupled with an express or implied promise to pay." ' Huffman Estate (No. 3), 349 Pa. 59, 63, 36 A. 2d 640, 643 (1944), quoting from Markee v. Reyburn, [258 Pa. 277, 101 Atl. 993 (1917)].

Id. at 478. The court concluded that the letters from Armstrong to Weiner did not contain an actual admission that Armstrong owed Weiner a debt

because of the defective floor and therefore the letters did not bar the statute of limitations defense.

In the case at bar, the correspondence upon which Cumberland Valley relies is devoid of any admission of fault by Monroe, let alone an unequivocal acknowledgment that it owed Cumberland Valley a debt because of the allegedly defective roof coating. Thus, the correspondence between Cumberland Valley and Monroe did absolutely nothing to prevent the running of the statute of limitations. It must therefore be concluded that Counts II, III, and IV of plaintiff's suit were not timely filed and are therefore barred.[2]

## ORDER

And now, June 17, 1982, for the reasons appearing in the opinion filed this date, The Monroe Company's motion for summary judgment is granted as to Counts II, III, and IV, of plaintiff's complaint. Its motion for summary judgment as to Count I is denied.

It is further ordered that additional defendant Gibson-Homan's motion for summary judgment is granted as it relates to Counts II, III, and IV and denied with respect to Count I.

---

2. Although Monroe also pleaded the statute of limitations to Count I in its new matter, Monroe did not raise this issue in its motion for summary judgment, nor did it brief or argue this point. This court will not consider the matter sua sponte and we express no opinion with respect to whether Count I is also barred.