Raymond PEARL, Warren Berg, Bruce W. Ecke, Randy Stoltz, James Fischer, Dr. James M. Miller, Charles Dear and Douglas E. Waller, individually and as Class Representatives of all individuals who have suffered property damage as the result of the installation of urea formaldehyde foam insulation.

Raymond Pearl, Warren Berg, Bruce W. Ecke, James Fischer and Dr. James M. Miller, individually and as Class Representatives of all individuals who have suffered certain physical harm and who can be foreseeably expected to suffer future additional injuries as a result of exposure to urea formaldehyde foam insulation

v.

ALLIED CORPORATION, Borden, Inc., Celanese Corporation, Ciba-Geigy Corporation, Monsanto Co., Getty Refining & Marketing Co., Georgia-Pacific Corporation, GAF Corporation, Univar Corporation, International Minerals & Chemicals Corporation, Occidental Chemical Corporation, Reichhold Chemicals, Inc., Basf Wyandotte, Wright Chemical Co., Tenneco Chemicals, Inc.

Civ. A. No. 82–2931.

United States District Court,
E.D. Pennsylvania.

April 8, 1983.

Edwin P. Rome, Philadelphia, Pa., for plaintiffs.

Alan Klein, Franklin Poul, David L. Grove, Philadelphia, Pa., for defendants.

MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Complaining that the installation of urea formaldehyde insulation in their residences

has generally resulted in property damages and a diminution in the fair market value of their homes, plaintiffs, purportedly representing a class of similarly situated individuals, instituted this action seeking appropriate recompense from defendants, manufacturers of the allegedly dangerous product. The complaint also alleges that a second class of plaintiffs have or will suffer physical harm and unspecified injuries as a result of their exposure to urea formaldehyde insulation. Hence, plaintiffs purport to represent two discrete classes: "Class I" plaintiffs are those who have suffered *property damage* as a result of their use of the offensive insulation; "Class II" plaintiffs purportedly have suffered or will suffer a variety of *physical maladies* as a result of their urea formaldehyde exposures.

Defendants, moving to dismiss[1], argue that Class I plaintiffs have suffered no *tort* injury and that Class II plaintiffs have failed to properly allege that they suffer from any presently detectable physical injury.

A brief procedural background is required to fully understand the position of the parties. This action was initially commenced in the Court of Common Pleas of Philadelphia County and, after the filing of an amended complaint, removed to this Court. Defendants then filed a motion to dismiss and, contemporaneously therewith, a motion to stay discovery pending our ruling on the former motion. Responding, plaintiffs moved to file a second amended complaint which, they assert, will moot out any perceived defect which may exist in the first amended complaint. Defendants, recognizing the liberal policy which favors amendment, argue that the proposed second amended complaint fails to cure the above described legal deficiencies. As such, our attention is directed to plaintiffs' proposed second amended complaint; our inquiry centers upon whether it states a claim upon which relief may be granted.

The gist of defendants' motion, as it relates to the Class I plaintiffs, is simply stated: the expressed damages for the diminution in the quality and value of plaintiffs' homes and the various costs associated with retrofitting their residences, fail to state *tort* claims. Therefore, defendants assert, Class I plaintiffs may not properly seek tort damages for defendants' "willful, deliberate, outrageous and reckless" conduct.

Plaintiffs, countering, argue that the damages which their homes sustained result from defendants' tortious conduct and that the motion should be denied.

The parties, although bitterly contesting the application of relevant law, do not dispute that our inquiry as to Class I plaintiffs is guided by *Pennsylvania Glass Sand v. Caterpillar Tractor Co.,* 652 F.2d 1165 (3d Cir.1981). There, the Third Circuit predicted how the Pennsylvania courts would view a claim somewhat analogous to the one at bar. Plaintiff in *Pennsylvania Glass Sand* purchased from defendant a front-end loader which, after four years of operation, suddenly burst into flames. The operator quickly abandoned the machine but failed to turn off the motor. As a result, hydraulic fluid fueled the spreading fire which consumed the machine. Plaintiff sought recompense under § 402A of the Restatement of Torts (Second) and contended that the defendant's failure to equip the machine with automatic fire suppression equipment constituted a defect.

The District Court concluded that plaintiff's claim amounted to one for economic loss for breach of contract and granted defendant's motion for summary judgment. Reversing, the Circuit explored the intersection between contract and tort law and instructed that the proper delineation thereof "must" be determined by "analyzing interrelated factors such as the nature of the defect, the type of risk and the manner in which the injury arose." *Id.* at 1173.

---

**1.** The instant motion is aimed solely at the tort portions of the complaint and does not attack the breach of contract claims.

The propriety of this tripartite analysis, the court felt, was supported by "[s]everal principles and trends" which generally view warranty law as the appropriate vehicle to redress claims that a defective condition renders a product "inferior or unable to adequately perform its intended function". Damages due to such "qualitative defects" are generally expressed as "reduced value, return of purchase price, repair and replacement" and are obtained by suit for breach of contract. 652 F.2d at 1172.

Continuing, *Pennsylvania Glass Sand* observed that "[o]n the other hand", contract theory is "ill-suited" to correct problems of hazardous products which "cause physical injury". As such, tort law obligates manufacturers to produce safe items "regardless of whether the ultimate impact of the hazard is on people, other property, or the product itself." 652 F.2d at 117–273.

Defendants, asserting that the case at bar falls squarely within the "qualitative defect", breach of contract category, argue that Class I plaintiffs may not seek recovery in tort for either the "reduced value" of their homes or the costs associated with the "repair and replacement" of the insulation. Countering, plaintiffs urge that the product's proffered defect caused "physical injury" to "other property", their homes, and that tort recovery is permissible.[2] This latter argument follows *Pennsylvania Glass Sand's* observation that "[e]conomic loss frequently involves only damage to the defective product itself, with no attendant injury to persons or other property." 652 F.2d at 1171.

An analysis of the "interrelated factors", as revealed by the proposed complaint with regard to the nature and type of risk involved and the manner in which the injury arose, convinces us that Class I plaintiffs have stated a colorable tort claim. *Pennsylvania Glass Sand v. Caterpillar Tractor Co.*, 652 F.2d at 1173. *See also, E.J. Stewart, Inc. v. Astken Products, Inc.*, 81–3192 (E.D.Pa. October 19, 1982).

Specifically, the proposed amended complaint alleges that defendants placed formaldehyde into the stream of commerce with the knowledge that it would be mixed with other resins and sold as urea formaldehyde insulation. Plaintiffs also assert that once installed, the product emits carcinogenic toxic fumes which require its prompt removal. Plaintiffs also claim that defendants failed to exercise reasonable care in the sale of their product. Worse, defendants purportedly failed to warn plaintiffs of the dangerous propensities of urea formaldehyde notwithstanding the fact that they, defendants, knew or should have known, of its inherent dangers.

As a result of these allegations, Class I plaintiffs seek damages for the diminution in the quality and value of their homes, costs associated with retrofitting their residences as well as other compensatory and punitive damages.

These allegations which highlight the "nature of the defect and the type of risk it poses" are the factors which "guide[ ]" our inquiry. *Pennsylvania Sand Glass v. Caterpillar Tractor Co.*, 652 F.2d at 1174.

Hence, the damage which plaintiffs' homes have allegedly suffered arises from use of a defective component part; one which purportedly causes cancer and thereby results in a devaluation of property. Allegations that component building parts contain latent defects and cause harm typically state tort claims. *See, Lantis v. Astec Industries, Inc.*, 648 F.2d 1118 (7th Cir. 1981); *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076 (5th Cir.1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); *Brizendine v. Visador Co.*, 437 F.2d 822 (9th Cir.1970). We, therefore, conclude that the nature of the defect, the first subject of inquiry under *Pennsylvania Glass Sand*, supports plaintiffs' contention that they have stated a claim under § 402A.

**2.** Plaintiffs colorfully express this theory with the observation that "merg[ing] rhyme with reason, it is the home not the foam that has been damaged". *Plaintiff's Reply Memorandum in Support of Motion to Amend* (Document 51) at 6.

The type of risk posed, the second *Pennsylvania Glass Sand* factor, also weighs in favor of Class I plaintiffs. Specifically, plaintiffs' allegations that they have suffered property damage by virtue of exposure to carcinogenic substances states a tort claim. *Silkwood v. Kerr-McGee Corp.,* 667 F.2d 908, 920–21 (10th Cir.), *pet. for cert. filed,* 51 U.S.L.W. 3058 (August 8, 1982); *Allen v. United States,* 527 F.Supp. 476 (D.Utah 1981). *Cf. Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 73–4, 98 S.Ct. 2620, 2630–31, 57 L.Ed.2d 595 (1978) (Finding that the proximity to a nuclear power plant and the "environmental and aesthetic consequences" of thermal lake pollution and exposure to "non-natural radiation" confer standing to assert a Fifth Amendment "taking" claim.); *In Re Three Mile Island Litigation,* 87 F.R.D. 433, 438 (M.D.Pa.1980) (Certifying a class of business entities and individuals who suffered, *inter alia,* "possible diminution in real estate value" by virtue of their proximity to the Three Mile Island nuclear reactor.)

The manner in which the risk arose, the final subject of inquiry under *Pennsylvania Glass Sand,* also supports the contention that the case at bar sounds in tort. Class I plaintiffs have not alleged that the urea formaldehyde insulation was of poor quality or otherwise unfit to perform its job. As such they neither seek to protect their expectation interests nor secure the benefit of the bargain. Rather, plaintiffs complain that the insulation contains a hazardous defect. These facts are both compelling and "significant[ ]". *Pennsylvania Glass Sand Co. v. Caterpillar Tractor Co.,* 652 F.2d at 1175.[3]

■ We now consider defendants' assertions that Class II plaintiffs have impermissibly failed to allege any presently detectable physical injury or malady from which they suffer. Analysis of this issue, not surprisingly, commences with the proposed second amended complaint which charges that the Class II plaintiffs "have suffered certain physical harm". *See, Proposed Second Amended Complaint,* ¶¶ 4, 30.

Defendants attack this factual allegation because, they contend, Class II plaintiffs do not actually suffer from any detectable injury. In opposing plaintiffs' motion to file the proposed complaint, defendants assert that "plaintiffs in products liability actions ... *customarily* state the injuries they ... have suffered ... in some detail" and that the proposed complaint *"suggests"* that plaintiffs suffer no "actual detectable injuries". *Joint Memorandum of Law Of Defendants In Opposition To Plaintiffs' Motion For Leave To File A Second Amended Complaint* (Document 49) at 5, (emphasis added).

Pleading techniques which plaintiffs "customarily" employ are not determinative of the issue at bar. The same is true of a proffered reading of the complaint which "suggests" a construction unfavorable to plaintiffs. In deciding whether plaintiffs have stated a claim, we are bound by the Federal Rules and cases which have interpreted them. Notwithstanding any purported "customary" pleading practice, plaintiffs need only allege a "short and plain statement of the claim showing that the pleader is entitled to relief". Fed.R. Civ.P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (Complaint should not be dismissed unless it "appears beyond doubt that plaintiff can prove no set of facts in support of his claim".) Moreover, our obligation at this juncture requires that we credit all of plaintiffs' factual averments, *Walker Pro-*

---

**3.** This conclusion *may* conflict with a decision rendered by Judge Pollak in *Mount Airy Lodge, Inc. v. Upjohn Co.,* 79–4658 (E.D.Pa. July 14, 1982) (bench ruling). As Judge Pollak observed at the commencement of argument on the issue, District Courts are obligated to apply the law as articulated by the appellate court. Any perceived inconsistency between our ruling and that of Judge Pollak in *Mount Airy*

*Lodge,* is simply due to the manner in which we have each sought to discharge our duties.

We believe, however, that the inconsistency between our conclusion and that of Judge Pollak is more imagined than real. *Mount Airy Lodge* was adjudicated upon a Rule 56 motion, this case arises under Rule 12. Our obligation is to test plaintiffs' allegations, not their proofs.

*cessing Equipment Co. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); *Eaby v. Richmond*, 561 F.Supp. 131 at 133 (E.D.Pa.1983), and refrain from a construction which "suggests" any contrary interpretation. *Id.*

Application of these basic pleading principles yields the conclusion that Class II plaintiffs have stated a claim. Defendants' assertion that the complaint wrongfully assumes that inhalation of formaldehyde fumes can lead to personal injury is simply grist for the pre-trial mill.

An appropriate order shall issue granting plaintiffs' motion to file an amended complaint and denying defendant's motion to stay discovery and to dismiss.