The PHILADELPHIA
NATIONAL BANK

v.

The DOW CHEMICAL COMPANY,
Dow Chemical U.S.A., and
Amspec, Inc., et al.

Civ. A. No. 83–5408.

United States District Court,
E.D. Pennsylvania.

Jan. 24, 1985.

David Berger, Howard I. Langer, Berger & Montague, P.C., Philadelphia, Pa., for plaintiff Philadelphia National Bank Building.

Bruce D. Lombardo, Elizabeth M. McKenna, Harvey, Pennington, Herting & Renneisen, Ltd., Philadelphia, Pa., for third-party defendants Ewing Cole Cherry Parsky and Tecton, Inc.

Joseph G. Manta, William R. Hourican, Frumkin & Manta, Philadelphia, Pa., for defendants The Dow Chemical Company, Dow Chemical U.S.A., and Amspec, Inc.

Sean P. Flynn, Waters, Gallagher & Trachtman, Norristown, Pa., for third-party defendant Keyston Wire and Iron Works, Inc.

Edward Gerald Donnelly, Jr., Antoinette R. Stone, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for third-party defendant E.L. Conwell and Company.

J. Grant McCabe, III, Rawle & Henderson, Philadelphia, Pa., for third-party defendant Cornell and Company, Inc.

R. Thomas McLaughlin, Kelly, Harrington, McLaughlin & Foster, Philadelphia, Pa., for third-party defendant McCloskey and Company, Inc.

## MEMORANDUM

NEWCOMER, District Judge.

PNB brought this action to recover for injuries allegedly brought about by the incorporation of Dow's [1] product, Sarabond, into the mortar used in the construction of PNB's Plaza building. PNB contends Sarabond has caused corrosion of metals embedded in the mortar and brick panels of its building and cracking of the masonry on the exterior of the building. Recovery is sought of the costs of inspection and repair of the building, loss of its use, loss of customers, and loss of employee time. PNB also seeks punitive damages. Presently before me is Dow's motion for summary judgment on all tort counts, which include negligence (Count III), strict liability (Count IV), misconduct (Count V), intentional tort (Count VI), and fraud (Count VII). Defendant also seeks summary judgment on plaintiff's claim for punitive damages. For reasons discussed below, the motion will be denied.

Dow contends all of PNB's counts alleging tort liability are defective inasmuch as the damages for which PNB seeks to recover constitute "economic loss." The parties agree that under Pennsylvania law no negligence or strict liability may be imposed for mere economic loss. *Pennsylvania Glass Sand v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3rd Cir.1981). They differ, however, as to the applicability of this principal to the facts of this case.

Dow's argument is essentially threefold. It first contends that each of the items of damages for which recovery is sought constitutes economic loss. Second, it argues

---

1. Plaintiff named as defendants the Dow Chemical Company, Dow Chemical U.S.A., and Amspec, Inc. For the sake of convenience all three defendants shall be collectively referred to as "Dow."

that no injury to "other" property has occurred inasmuch as the Sarabond has become an integral and indivisible part of plaintiff's building. Finally, Dow contends that recovery in tort hinges upon a sudden and catastrophic loss as opposed to one resulting from gradual deterioration.

The leading case on the subject is *Pennsylvania Glass Sand* (hereinafter "PGS"). In *PGS* plaintiff purchased from defendant a front-end loader which functioned without incident for four years. Subsequently, while the machine was in operation, a fire broke out in the front portion. The operator escaped without injury, but in his haste he failed to turn off the motor, which in effect further fueled the fire. As a result the loader was severely damaged. Plaintiff sought to recover the amount spent on repair and replacement of the machine contending the machine was defective in that it had no fire suppression system. Defendant contended these items constituted mere economic loss which could be recovered, if at all, in a contract action.

The issue before the Third Circuit was whether injury to the defective product itself should be regarded as an economic loss recoverable only in a contract action. The Court noted that the items most frequently relegated to the realm of economic loss are decrease in value caused by a defect, cost of repair of replacement, and loss of profits—all items sought by PNB in this action. It nevertheless concluded plaintiff's injuries were cognizable in strict liability.

In reaching this conclusion the Court noted as follows:

> The items for which damages are sought, such as repair costs, are not determinative. Rather, the line between tort and contract must be drawn by analyzing interrelated facts such as the nature of the defect, the type of risk, and the manner in which the injury arose.

652 F.2d at 1173. The Court thus sought to draw a line between contract actions in which the gravaman of plaintiff's complaint is that he failed to receive the quality of product he expected, and tort actions, the gist of which is that the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or his property. Stated another way, the issue is whether a defect renders a product unsafe or whether it merely makes the product ineffective.

■■■ Dow's first contention—that the items for which recovery is sought determine whether an injury may be designated "economic loss—" is plainly wrong. *PGS* clearly concluded that the Court must look behind the actual damages alleged to ascertain the nature of the defect and the type of risk it posed. In fact, one of the items for which recovery is sought here—repair and replacement—is precisely what *PGS* held plaintiff could recover in strict liability.

Defendant's next two contentions are more difficult. Because they overlap I will discuss them together. Defendant asserts that under *PGS* plaintiff must establish actual injury to person or property and furthermore that the injury occurred in a sudden and calamitous manner. Plaintiff disputes that it must establish *actual* injury to persons or property, contending instead that if a defect presents an unreasonable *risk* of harm to persons or property then all damages occasioned by the defect are recoverable in tort. Plaintiff further argues that it has in fact created an issue of fact as to whether injury to property other than the defective product has, in fact, occurred. Finally, plaintiff denies that the injury must occur in a sudden and calamitous manner.

Language may be found in *PGS* to support the positions advanced by both sides. For example, the Court noted that, generally speaking, "defects of quality, evidenced by internal deterioration or breakdown, are assigned to the economic loss category, while the loss stemming from the defects that cause accidents of violence or collision with external objects is treated as physical injury." 652 F.2d at 1169–1170. Whether *PGS* intended to require an actual calamitous injury as a prerequisite to tort recovery, however, is brought into question by the Court's characterization of a products

liability case as one in which the plaintiff "has been *exposed*, through a hazardous product, to an unreasonable *risk* of injury to his person or his property." *Id.* at 1169 (emphasis added). In addition, the Court concluded plaintiff's case presented a tort claim because the alleged defect "constitutes a safety hazard that posed a serious *risk* of harm to *people* and property" despite the fact that no one was in fact injured. *Id.* at 1174 (emphasis added). The Court noted also that with some products an "accident" may not be clearly distinguishable from internal deterioration. *Id.* at 1171, n. 19.

A more recent Third Circuit case refined and applied *PGS* in the maritime context. *East River Steamship Corp. v. Delaval Turbine, Inc.,* 752 F.2d 903 (3d Cir.1985).[2] In *Delaval* plaintiff alleged that component parts of turbines installed in four of its ships were defective. Difficulties arose while one of the ships was near port. Interim repairs were made, but problems again arose during a storm at sea. Ultimately no persons or property, other than the turbine parts themselves, were damaged; however, plaintiff contended that because the difficulties endangered the ship and her crew during the storm the safety-related policies of strict liability were implicated. The defective parts were replaced in plaintiff's other three ships prior to any dangerous encounters.

Relying on the three factors isolated in *PGS*—the nature of the defect, the manner in which it presents itself, and the type of risk inherent in the defect itself—the Court denied recovery in strict liability. Specifically, the Court found that the defect was qualitative, as opposed to safety-related, that it manifested itself by gradual internal deterioration, and that it posed an inherent risk of operation at a lower capacity as opposed to sudden injury to persons or property.

While the issue is a close one, I believe Pennsylvania courts would permit recovery in strict liability under the circumstances of this case. PNB has come forward with evidence that "other property" has in fact been injured—the brick panels and steel infrastructure of the building.[3] Furthermore, it has presented evidence that a very real risk of injury to persons, by way of crumbling mortar and falling bricks, is present. Emergency repairs have been undertaken at the PNB building to prevent masonry from becoming dislodged, and numerous instances of crumbling masonry due to the incorporation of Sarabond into other buildings are cited.

Dow relies heavily upon *Industrial Uniform Rental Company v. International Harvester,* 317 Pa.Super. 65, 463 A.2d 1085 (1983). In *Industrial Uniform* the Court sustained a demurrer to a complaint which sought to recover in strict liability for the cost of repairing cracked frames in a number of trucks purchased from defendant. The court concluded that recovery in tort was inappropriate:

> Extrapolating from the above-mentioned authority we formulate the following rule: In an action between commercial enterprises, where defective design, manufacture and sale of a product is alleged, *where there is nothing in the record to indicate that the defect is a condition potentially dangerous to persons or to property,* and where the purported defect results in progressive deterioration of the product itself, the buyer's cause of action for its economic losses against the seller is in breach of warranty under the U.C.C. (emphasis added)

463 A.2d at 1093. *Industrial Uniform,* however, does not control the case before me inasmuch as PNB has come forward with uncontroverted evidence that its building—like several others containing Dow's product—presents a very real hazard to people and that the Sarabond incorporated

---

2. Although Delaval raised the issue of the applicability of products liability principles in admiralty cases, the Court found no reason to apply rules other than those applied on land and relied heavily on *PGS.*

3. I am reluctant to rely solely on this contention because it could well lead to the application of strict liability to all construction cases.

into the building's mortar has caused serious damage to other property—the steel infrastructure.

Since the ruling in *PGS* at least two Pennsylvania courts of common pleas have concluded strict liability principles apply in situations highly similar to the one before me. *School District of Lancaster v. AS-ARCO*, June Term, 1982, No. 1414 (Phila. C.P. Dec. 6, 1983); *Area Vocational Technical Board v. National Gypsum Co.*, June Term, 1982, No. 119 (Lancaster C.P. Sept. 7, 1983) ("Vo-Tech").[4] Both cases involve the use of asbestos products in the construction of schools, and both concluded that the risk of injury to persons and/or property implicated the safety concerns of strict liability as opposed to the expectation-bargain policies of contract law. In reaching this conclusion each court relied upon the fact that asbestos presents a real, unspeculative health hazard and that additional property had been damaged inasmuch as repair necessitated removal of more than the defective asbestos product alone. *ASARCO*, Slip op. at 6–7, *Vo-Tech*, Slip op. at 3. *Vo-Tech* specifically rejected the proposition that a sudden calamitous injury is a requirement of Pennsylvania strict liability law. *ASARCO* distinguished *Industrial Uniform* on the grounds stated above: unlike the cracked truck frames, defendant's asbestos product presents a very real, unspeculative risk of injury to persons and/or property.

█ I conclude on the basis of the limited Pennsylvania authority before me that Pennsylvania would permit recovery in tort where an allegedly defective construction product causes injury to other components used in construction and creates a real, unspeculative risk of harm to passers-by on the street below.[5] Under the circumstances here presented I believe that the safety-related policies behind tort law are implicated.

█ Dow's remaining arguments can be readily dismissed. Dow first asserts that because no "product" or "chattel" was sold recovery in strict liability is barred, relying on *Cox v. Shaffer*, 223 Pa.Super. 429, 302 A.2d 456 *allocatur denied*, (1973). In *Cox* the court concluded that "a silo constructed in place on the employer's land is not a sale of a 'product.'" 302 A.2d at 457. Dow makes the rather metaphysical argument that because the Sarabond has now been incorporated into the structure of the Plaza Building the Sarabond is more akin to the silo than it is to a "product." I reject this contention. Sarabond, in and of itself, is obviously a product and not real property or a permanent fixture upon real property. The fact that it is used in the construction industry does not change that fact.

█ Dow also contends strict liability is unavailable to plaintiff because the Sarabond reached PNB in a condition substantially changed from that in which it was sold. To absolve the manufacturer, the alteration in its product must be one which could not be reasonably foreseen or expected. *Merriweather v. E.W. Bliss Co.*, 636 F.2d 42, 45 (3d Cir.1980). At this stage Dow has presented no evidence that suggests the alterations plaintiff or its agents made to the Sarabond were anything other than the very alterations Dow anticipated would occur with a mortar additive. The issue of substantial, unforeseeable altera-

---

**4.** Judge Troutman predicted Pennsylvania law would move in this direction in *Pearl v. Allied Corp.*, 566 F.Supp. 400 (E.D.Pa.1983) (installation of urea-formaldehyde insulation in plaintiffs' homes presented risk of injury to persons and/or property, thereby permitting recovery in tort).

**5.** In addition, I believe a principled distinction can be drawn between *PGS* and *Delaval*, on the one hand, and the Pennsylvania asbestos cases on the other. In the asbestos cases, as in the case before me, the product itself is inherently dangerous to people. No outside intervention is required to make the defect hazardous. In *PGS* and *Delaval* the defect became hazardous only upon the occurrence of some unrelated danger such as a sudden fire or a storm. Of course, no distinction need be drawn. *Delaval* was primarily concerned with admiralty law and thus would not have searched Pennsylvania precedent for guidance, and as noted above, nothing in *PGS* would preclude the possibility of recovery under the circumstances presented here or in the asbestos cases.

tion will therefore be left for the jury's determination.

Dow's argument that punitive damages are not available in this action is predicated on dismissal of all tort counts. Because I have not dismissed any tort counts, this portion of the motion will also be denied.