**HARTFORD FIRE INSURANCE COMPANY**

v.

**HÜLS AMERICA, INC., Kay–Fries Holding, Inc., and Wirt–Vitabile Architects, P.C.**

Civ. A. No. 94–2651.

United States District Court, E.D. Pennsylvania.

July 18, 1995.

Elliott R. Feldman, Cozen & O'Connor, Philadelphia, PA, for Hartford Fire Ins. Co.

A. Michael Pratt, Margaret A. Suender, Kenneth H. Zucker, Randi A. Schwartz, Pepper, Hamilton and Scheetz, Philadelphia, PA, for Hüls America, Inc., Kay–Fries Holding, Inc.

Glenn C. Equi, Lawrence A. Borda, Danell J. Palladine, Harvey, Pennington, Herting & Renneisen, Ltd., Philadelphia, PA, for Wirt–Vitabile Architects, P.C.

Elliott R. Feldman, William N. Clark, Jr., Cozen and O'Connor, Philadelphia, PA, for Concord Service, Inc.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

The plaintiff in this action—Hartford Fire Insurance Company ("Hartford"), as subrogee of Alpha Housing and Health Care, Inc., t/a Main Line Nursing Rehabilitation Center ("Alpha")—has brought this suit against (1) Hüls America, Inc., including its division, Trocal Roofing Systems, (2) Hüls America's predecessors-in-interest, Kay–Fries Holding, Inc., and Dynamit Nobel of America, Inc., and (3) Wirt–Vitabile Architects, P.C., to recover for damages suffered by Alpha when, on November 27, 1993, the roof on a building owned by Alpha in Malvern, Pennsylvania, failed. Hartford has, pursuant to an insurance policy maintained by Alpha, reimbursed Alpha for its losses, and now Hartford seeks to recoup those losses by suing the manufacturer of the roof (the first two defendants, which will collectively be referred to hereafter as "Hüls") and the architecture firm that had allegedly been hired by Alpha to inspect the building (including the roof) and report anticipated problems.

Pursuant to Federal Rule of Civil Procedure 12(c), Hüls has moved for judgment on the pleadings. Three of the five counts in plaintiff's complaint run against Hüls: count I for "negligence"; count III for "strict prod-

ucts liability"; and count IV for "breach of warranty." Hüls argues that (1) "the exclusive warranty issued by Hüls in conjunction with the purchase of the ... roof unquestionably bars any claims for consequential damages arising from alleged defects in the roof," (2) "plaintiff's negligence and strict liability claims should be dismissed because Pennsylvania law does not permit the recovery of consequential or economic damages in tort in this type of commercial action," and (3) "the exclusive warranty given on the roof expired three years prior to the date plaintiff's alleged damages occurred." Hüls Memorandum, at 2.

■ The first and third arguments made by Hüls involve the warranties purchased by Alpha in connection with the purchase of the roof. The pleadings do not include a copy of either of the two warranties, so for the warranties to play any role in the resolution of this motion, it would be necessary for the motion to be converted into a motion for summary judgment, although Hüls apparently believes that the warranties (of which Hüls has provided copies, along with an affidavit attesting to the authenticity of the warranty copies) can be considered without conversion of the motion. Hartford argues to the contrary, but nonetheless urges that the motion be converted, and has, in anticipation of such conversion, provided the court with affidavits of its own.[1] I am not persuaded that I can consider the warranties unless the motion is treated as one for summary judgment rather than as simply for judgment on the pleadings. Pursuant to Rule 12(c), notice is to be provided when such a conversion takes place. In this case, the movant has created the need for conversion, and the nonmovant has urged that the motion be converted. In addition, the issue has been raised in the correspondence the parties have submitted to chambers subsequent to the briefing of the motion. *See supra* note 1. Accordingly, I consider the parties to have been on notice that the motion was subject to conversion, and I will therefore treat the motion as a motion for summary judgment.

In addressing the motion, I will first take up Hüls's second and third arguments, the resolution of which will make it unnecessary for me to reach Hüls's first argument.

Hüls's second argument involves what is known as the "economic-loss doctrine." As set forth in the Supreme Court's opinion in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865 (1986) (in which the Court was sitting in admiralty), the economic-loss doctrine provides that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." Whether a product fails "through gradual deterioration or internal breakage" or "calamitous" event, "since by definition no person or other property is damaged, the resulting loss is purely economic. Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law." *Id.* at 870, 106 S.Ct. at 2302.

■ Both the Third Circuit and the Pennsylvania Superior Court have predicted that the Pennsylvania Supreme Court will adopt the economic-loss doctrine as it is set forth in *East River*. *See Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 119 (3d Cir.), *cert. denied*, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987); *REM Coal Co. v. Clark Equipment Co.*, 386 Pa.Super. 401, 563 A.2d 128, 132 (1989). As it is formulated in *East River*, the doctrine clearly precludes recovery by Hartford in tort for damage to the roof itself. The remaining question is whether the tort claims relating to water damage to the building and to the resulting interruption of Alpha's business are also precluded.

■ Hartford argues that the water-damage and business-interruption claims are not precluded because they represent damage to

---

**1.** Not all of the parties' submissions have been filed; accordingly, in the Order that accompanies this Memorandum I have directed the Clerk of Court to file the various letters (and their enclosures) that have been submitted to chambers subsequent to the briefing of this motion.

"other property"—that is, property other than the roof itself. Hartford contends that "Pennsylvania courts have adopted a bright line test for delineating between economic losses and damage to other property. Simply put, if physical injury to any property other than the product itself occurs, than [sic] the plaintiff may recover in tort." Hartford Memorandum in Opposition, at 7. Curiously, the cases discussed by Hartford immediately following the just-quoted language are not Pennsylvania cases, but are cases that apply the law of (1) the District of Columbia—*Potomac Plaza Terraces, Inc. v. QSC Prods., Inc.,* 868 F.Supp. 346 (D.D.C. 1994)—and (2) Illinois—*United Air Lines, Inc. v. CEI Indus. of Illinois,* 148 Ill.App.3d 332, 102 Ill.Dec. 1, 499 N.E.2d 558 (1986).[2]

An examination of the cases cited by both Hartford and Hüls reveals that there is no one, monolithic economic-loss doctrine. Prior to the Supreme Court's decision in *East River,* the courts of appeals sitting in admiralty had, following the paths of the various state courts, adopted different versions of the doctrine. *See East River,* 476 U.S. at 868–70, 106 S.Ct. at 2300–02. Different jurisdictions continue to apply variations of the economic-loss doctrine, as is evidenced by the disparity between the decisions in *Potomac* (in which the court, applying the law of the District of Columbia, held that any damage

other than that to the roof itself was recoverable in tort) and *Chicago Heights Venture v. Dynamit Nobel of America, Inc.,* 782 F.2d 723, 726–29 (7th Cir.1986) (in which the court, applying the law of Illinois, held that the economic-loss doctrine precluded recovery in tort for water damage to a building that resulted from the failure of a roof).[3] The parties appear to agree that the law of Pennsylvania governs this dispute, so the question that must be answered is, to what extent does the economic-loss doctrine, as found in the law of Pennsylvania, preclude recovery on the facts of the case at bar for (1) water damage to Alpha's building, and (2) Alpha's lost profits resulting from the interruption of its business.

Absent the water damage to Alpha's building—that is, if Hartford were simply seeking lost profits from the demise of the roof—this motion would be easily resolved. As Judge Joyner recently stated in *Eagle Traffic Control v. Addco,* 882 F.Supp. 417, 419 (E.D.Pa.1995), "[u]nder the law of Pennsylvania ..., there is no recovery under the tort theories of negligence [and] strict liability ... 'where a product malfunctions because of an alleged defect in the article and causes damages to the product itself and consequential damages in the nature of cost of repair or replacement or lost profits, but the malfunction causes no personal injury

---

**2.** At a later point in its memorandum, Hartford does discuss two cases that apply Pennsylvania law: *Lease Navajo, Inc. v. Cap Aviation, Inc.,* 760 F.Supp. 455 (E.D.Pa.1991), and *King v. Hilton–Davis,* 855 F.2d 1047 (3d Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 839, 102 L.Ed.2d 971 (1989). These cases address the situation in which the failure of a component part results in damage to the larger unit of which the failed part is a component. Neither case provides direct support for the proposition asserted by Hartford with respect to the existence of a "bright-line" test. As is discussed in the text *infra, King* may be read to support a contrary holding, and, to the extent that *Lease Navajo* may be read to support Hartford's position, I do not find it persuasive.

**3.** The holdings in *Chicago Heights* and *United Air Lines* (which is mentioned in the preceding paragraph in the text) are not incompatible: In *United Air Lines,* the court found that the roof collapse was a calamitous event, and Illinois continues to apply the calamitous/non-calamitous distinction that was rejected by the Court in *East River.* Thus, in *United Air Lines,* the economic-loss doctrine was held not to apply. In the case

of the gradual deterioration of the roof in *Chicago Heights,* the economic-loss doctrine did apply and, under Illinois law, that doctrine precluded the plaintiff from recovering for water damage to the building. Because the Court in *East River* rejected the calamitous/non-calamitous distinction, and because both the Third Circuit and the Pennsylvania Superior Court have predicted that the Pennsylvania Supreme Court will adopt the economic-loss doctrine as it was formulated by the Court in *East River,* the distinction does not apply in this case. In addition, outside of its retention of the calamitous/non-calamitous distinction, Illinois law provides no support for Hartford's argument in this case. *See, e.g., American Xyrofin, Inc. v. Allis–Chalmers Corp.,* 230 Ill.App.3d 662, 172 Ill.Dec. 289, 295, 595 N.E.2d 650, 656 ("The mere existence of physical harm to other property should not make a claim compensable in tort where the resultant harm flows only from disappointed commercial expectations."), *appeal denied,* 146 Ill.2d 621, 176 Ill. Dec. 791, 602 N.E.2d 445 (1992).

and no injury to any other property of the plaintiff.'" *Id.* at 419 (quoting *Lower Lake Dock Co. v. Messinger Bearing Corp.*, 395 Pa.Super. 456, 577 A.2d 631, 634 (1990)). The more difficult question is whether, as the phrase is used in *East River* and in the Pennsylvania case law, the alleged water damage constitutes injury to "other property."

No Pennsylvania case has clearly addressed this question, but an examination of the principles that have led to the creation of the economic-loss doctrine suggests that, when faced with the question, the Pennsylvania Supreme Court will conclude that, at least within the commercial context, the phrase "other property" does not include the type of property that one would reasonably expect to be injured as a direct consequence of the failure of the product at issue. In *N.Y. State Electric & Gas v. Westinghouse*, 387 Pa.Super. 537, 564 A.2d 919, 925–26 (1989) ("*NYSEG*"), the court explained the policy rationale for the holding in *East River*:

[W]here an allegedly defective product causes damage only to itself, and other consequential damages resulting from the loss of the use of the product, the law of contract is the proper arena for redressing the harm because in such a case, the damages alleged relate specifically to product quality and value as to which the parties have had the opportunity to negotiate and contract in advance. They have allocated the risks of possible types of losses, and agreed on the level of quality that will be given for the price demanded. When the product fails to conform and only economic losses result, the parties' recovery one against the other for economic losses should be limited to an action on that contract and no additional recovery in negligence or strict liability is permitted.

In *East River*, the Supreme Court contrasted economic losses—i.e., "the resulting loss due to repair costs, decreased value, and lost profits," which "is essentially the failure of the purchaser to receive the benefit of its bargain," 476 U.S. at 870, 106 S.Ct. at 2302, or, as the *NYSEG* court put it, damage to the product itself and "other consequential damages resulting from the loss of the use of the product," 564 A.2d at 925—with those that are traditionally the concern of tort law:

"The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products." When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong.

The tort concern with safety is reduced when an injury is only to the product itself. When a person is injured, the "cost of an injury and the loss of time or health may be an overwhelming misfortune," and one the person is not prepared to meet. In contrast, when a product injures itself, the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or, as in this case, experiences increased costs in performing a service. Losses like these can be insured. Society need not presume that a customer needs special protection. The increased cost to the public that would result from holding a manufacturer liable in tort for injury to the product itself is not justified.

Damage to a product itself is most naturally understood as a warranty claim. Such damage means simply that the product has not met the customer's expectations, or, in other words, that the customer has received "insufficient product value." The maintenance of product value and quality is precisely the purpose of express and implied warranties. Therefore, a claim of a nonworking product can be brought as a breach-of-warranty action. Or, if the customer prefers, it can reject the product or revoke its acceptance and sue for breach of contract.

Contract law, and the law of warranty in particular, is well suited to commercial controversies of the sort involved in this case because the parties may set the terms

of their own agreements. The manufacturer can restrict its liability, within limits, by disclaiming warranties or limiting remedies. In exchange, the purchaser pays less for the product. Since a commercial situation generally does not involve large disparities in bargaining power, we see no reason to intrude into the parties' allocation of the risk.

While giving recognition to the manufacturer's bargain, warranty law sufficiently protects the purchaser by allowing it to obtain the benefit of its bargain. The expectation damages available in warranty for purely economic loss give a plaintiff the full benefit of its bargain by compensating for forgone business opportunities. Recovery on a warranty theory would give the charterers their repair costs and lost profits, and would place them in the position they would have been in had the turbines functioned properly. Thus, both the nature of the injury and the resulting damages indicate it is more natural to think of injury to a product itself in terms of warranty.

A warranty action also has a built-in limitation on liability, whereas a tort action could subject the manufacturer to damages of an indefinite amount. The limitation in a contract action comes from the agreement of the parties and the requirement that consequential damages, such as lost profits, be a foreseeable result of the breach. In a warranty action where the loss is purely economic, the limitation derives from the requirements of foreseeability and of privity, which is still generally enforced for such claims in a commercial setting.

476 U.S. at 871–74, 106 S.Ct. at 2302–04 (numerous citations and footnotes omitted).

The principles set forth in *East River* suggest that the economic-loss doctrine precludes recovery in tort for claims that seek to recover damages for failed commercial expectations, as is the situation in the case at bar. Alpha expected the roof to protect its building from water damage and to allow it to continue its business operations without interruption. The roof failed to do so. Alpha's (or Hartford's) remedy is in contract, and not in tort.

Support for this conclusion can be found in a number of decisions, both of the persuasive and authoritative variety. In the authoritative category is *King v. Hilton–Davis,* 855 F.2d 1047 (3d Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 839, 102 L.Ed.2d 971 (1989), in which the Third Circuit, after reviewing the Supreme Court's decision in *East River,* held that, under Pennsylvania law, damages for injury to plaintiff's seed potatoes that resulted from the failure of the defendant's sprout suppressant could not, consistent with the economic-loss doctrine, be recovered in tort. The Court of Appeals held that the district court incorrectly held the seed potatoes to be "other property" because

it is the character of the plaintiff's loss that determines the nature of the available remedies. When loss of the benefit of a bargain is the plaintiff's sole loss, the judgment of the Supreme Court was that the undesirable consequences of affording a tort remedy in addition to a contract-based recovery were sufficient to outweigh the limited interest of the plaintiff in having relief beyond that provided by warranty claims.

*Id.* at 1051.

In *King,* the plaintiff had purchased seed potatoes which had already been treated with the defective sprout suppressant, so the Court of Appeals considered the potatoes to the product at issue, of which the sprout suppressant was simply a component part. *King* does not apply squarely to this case, for there has been no argument that Alpha purchased the building, which itself was injured and of which the roof was simply a component part. Nonetheless, the principle that "loss of the benefit of a bargain"—that is, a failed commercial expectation—is recoverable solely in contract does support the conclusion that Hartford's recovery against Hüls, if any, must be in contract.

In the category of persuasive cases, one finds an unpublished decision by Judge Huyett (applying the law of Pennsylvania) and a recent decision of the Sixth Circuit (applying the law of Michigan). In *Ringer v. Agway,*

*Inc.,* No. 89–2806, 1990 WL 112091 (E.D.Pa. Aug. 2, 1990), Judge Huyett faced the question whether the plaintiffs—potato farmers who had, like the plaintiffs in *King,* purchased defective seed potatoes (here the potatoes were infected with bacterial ringrot)—had suffered damage to "other property." The plaintiffs contended that the other property damaged included "(1) other potato tubers in the same supply of seed potatoes; (2) potato tubers which failed to grow from the plants which the infected seed potatoes produced; [and] (3) machinery, land and buildings which came into contact with the allegedly defective seed potatoes." *Id.* at *4. Judge Huyett concluded that "[n]one of these items of damages constitute[s] damage to 'other property.'" *Id.* In specifically addressing the claim regarding the machinery, land, and buildings exposed to the bacterial ringrot, Judge Huyett concluded that, "contrary to plaintiffs' contention" that the damaged "equipment was not part of the contract with defendants," "this form of loss ... is wholly commercial in nature and will not be recognized as 'other property.' These unfortunate losses were an ordinary commercial risk of a transaction in the potato industry." *Id.* at 5. Citing cases from other jurisdictions in which "courts have ... held that those aspects of damage which involve items or facilities obviously involving the bargain between the parties" do not constitute "damage to 'other property,'" Judge Huyett held that, "[i]n essence, plaintiffs here are alleging disappointed commercial expectations. Their losses are economic and their remedy lies in contract.... Pennsylvania's breach of warranty law provides the [plaintiffs] an appropriate remedy for enforcing their bargained for expectations, as well as [the defendant]'s obligations." *Id.*

Finally, in *Bailey Farms, Inc. v. NOR–AM Chemical Co.,* 27 F.3d 188, 191 (6th Cir.1994), the Sixth Circuit rejected plaintiff's argument that, under Michigan law, tort recovery for damage to a watermelon crop that resulted from use of a fumigant manufactured by the defendant was not foreclosed by the economic-loss doctrine:

Although the watermelon crops at issue in this case ... are technically "other property" than the purchased product, a success-

ful crop was part of the commercial expectations for the fumigant, and the loss of that crop allegedly the result of a defect of the use of the purchased product.... [A]t the heart of plaintiff's complaint is that the weed suppressant, through improper applications, proved inadequate and caused plaintiff consequential losses.

The teaching of these three cases, and of *East River* and *NYSEG,* is that the injury suffered by a commercial purchaser as a direct and foreseeable consequence of its failure to receive the benefit of its bargain can only be redressed in contract. Hartford's only potentially viable claim against Hüls, then, is its claim for breach of warranty. Judgment will, therefore, be entered in favor of Hüls on the claims both for negligence and for strict liability.

In opposition to Hartford's claim for breach of warranty, Hüls contends that the two, successive five-year warranties purchased by Alpha had expired more than three years prior to the failure of the roof in November 1993. The documentary evidence supports Hüls's contention, and Hartford has not raised any argument in opposition to Hüls's contention that the warranty had expired. Accordingly, judgment will also be entered in favor of Hüls on the claim for breach of warranty.