**WELLSBORO HOTEL COMPANY, Plaintiff,**

v.

**Leon D. PRINS, t/d/b/a Crest Painting– Wallpaper Hanging and Southwestern Petroleum Corporation, Defendants.**

**No. 4:CV–94–0964.**

United States District Court, M.D. Pennsylvania.

Aug. 24, 1995.

Raymond E. Ginn, Wellsboro, PA, for plaintiff.

John E. Person, Williamsport, PA, Russell J. Ober, Pittsburgh, PA, for defendant Southwestern Petroleum Corp.

### *MEMORANDUM*

McCLURE, District Judge.

**BACKGROUND:**

Plaintiff Wellsboro Hotel Company filed this products liability action[1] to recover for

damage to its building allegedly caused by the application of defendant's product. Plaintiff owns and operates the Penn Wells Hotel located in Wellsboro, Pennsylvania.

In April, 1990, plaintiff contracted with defendant Leon Prins t/a Crest Painting to apply a coating to the exterior, masonry walls of the hotel. The contract specified the use of a product manufactured by defendant Southwestern Petroleum Corporation (SWEPCO) marketed as SWEPCO Masonry Coating and promoted as a "protective coating designed for use on a variety of porous masonry surfaces." (Plaintiff's complaint, ¶ 7).

Work on the project was completed on or around August 1, 1990. Two years later, plaintiff observed cracking, chipping and peeling and crumbling of the paint and the underlying masonry. Plaintiff attributes these problems to the application of defendant's product and brings this action against Prins and SWEPCO for damage to its building.

Plaintiff asserts claims against SWEPCO for: 1) breach of express and implied warranties (Count I); 2) negligence (Count II); 3) breach of contract (Count III); and 4) strict liability (Count IV). Liability is asserted against Prins on theories of: 1) negligence (Count V); 2) breach of express and implied warranties (Count VI); and 3) breach of contract (Count VII).

Defendant SWEPCO moves for partial summary judgment on the strict liability claim asserted in Count IV on two grounds. It asserts that: 1) plaintiff cannot prevail on its claim of strict liability since only property damage is alleged; and 2) the only damages sought constitute economic loss unrecoverable as a matter of law under a theory of strict liability. (Record document no. 18) SWEPCO seeks, in the alternative, a preliminary determination from the court that imposition of liability against it under a theory of strict liability is contrary to social policy. *Id.*

---

1. This action originated in the Court of Common Pleas of Tioga County, Pennsylvania. It was removed to this court by defendant Southwestern Petroleum Corporation (SWEPCO) on diversity grounds. 28 U.S.C. § 1332.

For the reasons which follow, we will enter an order granting SWEPCO's motion for summary judgment on Count IV.

## DISCUSSION

### Summary judgment standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)

... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra,* 477 U.S. at 323 and 325, 106 S.Ct. at 2552–53 and 2554.

■■■ Issues of fact are " 'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 693–94 (3rd Cir.1988), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3rd Cir.1988).

### Choice of law

■■■ Choice-of-law decisions are governed by the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Here, all parties agree that Pennsylvania law governs. Plaintiff is a Pennsylvania corporation, and defendant's product was sold and applied here. The hotel is located in Pennsylvania and the damage allegedly sustained as a result of application of defendant's product occurred here. Application of Pennsylvania law is, therefore, proper under *Griffith v. United Air Lines,* 416 Pa. 1, 203 A.2d 796 (1964) and its progeny.

### Property damage

■■■ SWEPCO argues that recovery under section 402A of the *Restatement (Second) of Torts* (1965) is barred because there are no allegations, nor any proof, that its product posed a threat to the safety of individuals, and because only property damage is claimed to have resulted from the alleged defect. In a related argument, Swepco asserts that no viable strict liability claim exists because only economic damages are sought. Plaintiff seeks to recover the cost of removing the defective SWEPCO product, repairing the damage to the underlying mortar, repainting and repairing the surface. (See: record document no. 22, exhibit "B").

A line of federal and state court decisions dating from 1981 have established the parameters for recovery under a strict liability claim in which only property damage is asserted. In *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* (*PGS* ) 652 F.2d 1165 (3d Cir.1981), the Third Circuit identified three factors as relevant in determining whether a cause of action in strict liability lies where only property damage is asserted: 1) the nature of the defect; 2) the manner in

which it presents itself; and 3) the type of risk the defect posed. *Id.* at 1174. In *PGS,* the plaintiff sought to recover the cost of repairing a front-end loader which caught fire. Plaintiff alleged that the loader was defective because it was not equipped "with a fire suppression system, or with adequate warnings of the steps to be taken if a fire occurred." *Id.* at 1166. Plaintiff's theory was not that a product defect caused the fire, but rather that allegedly faulty design increased the risk of damage in the event of an accidental fire. After much discussion of products liability law in Pennsylvania and other states, the Third Circuit held that the damages sought were recoverable under a theory of strict liability.

The *PGS* holding was applied by the United States District Court for the Eastern District of Pennsylvania in *Philadelphia National Bank v. Dow Chemical Co., (PNB)* 605 F.Supp. 60, 63 (E.D.Pa.1985). Philadelphia National Bank (the bank or PNB) sued in strict liability to recover for damage to a bank building allegedly caused by the use of a mortar additive manufactured and sold by defendant Dow Chemical Co (Dow). Dow's product, known as Sarabond, was incorporated into the mortar during construction. PNB alleged that the Sarabond caused metals embedded in the mortar and brick panels of its building to corrode and cracked the exterior masonry. Contending that the Sarabond had become "an integral and indivisible part" of the PNB building and that the losses claimed resulted from gradual deterioration, not a "sudden and catastrophic loss," *Id.* at 62, Dow argued that plaintiff could not recover under a claim of strict liability.

After reviewing the Third Circuit holdings in *PGS* and *East River Steamship Corp. v. Delaval Turbine, Inc.,* 752 F.2d 903 (3d Cir. 1985) (en banc), the district court ruled that PNB had presented a viable claim, because it had

come forward with evidence that 'other property' has in fact been injured—the brick panels and steel infrastructure of the building. [Footnote omitted.] Furthermore, it has presented evidence that a very real risk of injury to persons, by way of crumbling mortar and falling brick, is

present. Emergency repairs have been undertaken at the PNB building to prevent masonry from becoming dislodged, and numerous instances of crumbling masonry due to the incorporation of Sarabond into other buildings are cited.

*Id.* at 63. Concluding "on the basis of the limited Pennsylvania authority" before it, "that Pennsylvania would permit recovery in tort where an allegedly defective construction product causes injury to other components used in construction and creates a real, unspeculative risk of harm to passers-by on the street below," the district court denied Dow's motion to dismiss PNB's strict liability claims.

The Third Circuit applied and refined the tri-part *PGS* test in *East River.* Although the claims asserted in that case arose under federal admiralty law, the court relied upon its prior decision in *PGS,* applying Pennsylvania law. East River Steamship Corp. (East River) sued to recover repair costs and lost profits sustained when alleged defects in the component parts of the turbines installed in four supertankers had to be repaired and replaced. Applying *PGS,* the Third Circuit considered: "the nature of the alleged defect, the manner in which the injury to the defective product occurred, and the type of risk that is inherent in the defect." *Id.* at 909. Each of these factors, it found, favored disallowing the claim. The court stated:

The defect involved internal deterioration and breakdown of the turbine's parts, and thus directly implicates the intended performance level of the turbine and the charterers' disappointed expectations in their purchase. Unlike the defect in those cases in which tort recovery is allowed for a damaged product, the defect in this case is not intimately related to the safety of the product, nor is it associated with calamitous events like fire or sudden collision....

We also find that the manner in which the damage to the turbine occurred implicates the expectation-bargain policy of warranty law rather than the safety-insurance policy of tort law.... In all the ships, the damage to the turbines occurred during normal operation of the turbine,

and resulted from the gradual and unnoticed deterioration of the turbines' component parts.... Unlike *PGS,* there was no 'sudden or calamitous' event which triggered the manifestation of the defect and the resulting damage....

.... [T]he defect involved gradual deterioration of the turbine's inner mechanisms ... [and] did not pose a risk of sudden or calamitous injury to persons or property. Instead, the risk created by the defect was that the turbine would operate at a lower capacity, thus reducing the ship's speed and causing the charterers losses in the form of down-time for repair and lost profits.... [T]his type of risk, rather than implicating a manufacturer's obligation to place safe products in the stream of commerce, only concerns the charterer's expectations as to the commercial suitability of the product.

*Id.* Based on these considerations, the court concluded that: "the defective turbine did not pose an unreasonable risk of harm to persons or property, and thus that the charterers have failed to state a cause of action in tort." *Id.*

That holding was affirmed on appeal by the United States Supreme Court, *East River Steamship Corp. v. Transamerica Delaval Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). The Court held "that a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *Id.* at 871, 106 S.Ct. at 2302. The Court distinguished "traditional 'property damage' cases" in which "the defective product damages other property, stating that under traditional tort principles, the manufacturer's duty of care includes "protection against property damage." *Id.* at 867, 106 S.Ct. at 2300.

The revised standard adopted by the United States Supreme Court in *East River* was adopted by the Third Circuit the following year, in another case applying Pennsylvania law, *Aloe Coal Co. v. Clark Equipment Co.,* 816 F.2d 110 (3d Cir.), *cert. denied,* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987). The Third Circuit reviewed the Court's analysis in *East River* and concluded "that the United States Supreme Court's analysis is so persuasive that it will be followed by Pennsylvania courts." *Id.* at 117. The *East River* test was endorsed by the Pennsylvania Superior Court in *REM Coal* in 1989.

A recent decision by the United States District Court for the Eastern District of Pennsylvania added a further refinement to the *East River* test. In *Hartford Fire Insurance Company v. Huls America, Inc.,* 893 F.Supp. 465, 469 (E.D.Pa.1995), the court held that "when faced with the question, the Pennsylvania Supreme Court will conclude that at least within the commercial context, the phrase 'other property' does not include the type of property that one would reasonably expect to be injured as a direct consequence of the failure of the product at issue." Plaintiff Hartford Fire Insurance Company (Hartford), asserted a subrogation claim assigned by its insured Alpha Housing and Health Care, Inc., t/a Main Line Nursing Rehabilitation Center (Alpha) for damages caused by the collapse of the roof on Alpha's building. Plaintiff asserted claims in strict liability and for breach of warranty and sought to recover for repairs to the roof itself and for water damage sustained after and as a result of the collapse. After examining at length the history of economic-loss doctrine as adopted by the Supreme Court in *East River,* the court concluded that the damages sought were "for failed economic expectations" and therefore, recoverable under a breach of warranty claim only and not in tort.

Alpha expected the roof to protect its building from water damage and to allow it to continue its business operations without interruption. The roof failed to do so. Alpha's (or Hartford's) remedy is in contract, and not in tort.

*Id.,* 893 F.Supp. at 470. In reaching that conclusion, *Hartford* relief upon *Bailey Farms, Inc. v. NOR–AM Chemical Co.,* 27 F.3d 188, 191 (6th Cir.1994) (applying Michigan law); *King v. Hilton–Davis,* 855 F.2d 1047 (3d Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 839, 102 L.Ed.2d 971 (1989) tort recovery unavailable under Pennsylvania law for harm to plaintiff's seed potatoes re-

sulting from (alleged failure of the defendant's sprout suppressant) and *Ringer v. Agway, Inc.*, No. 89–2806, 1990 WL 112091 (E.D.Pa. Aug. 2, 1990) (potato farmers who had purchased seed potatoes infected with bacterial ringrot suffered no damage to "other property" despite allegations of damage to other potato tubers in the same supply of seed potatoes and potato tubers which failed to grow from the plants which the infected seed potatoes produced).

The Pennsylvania Superior Court revisited the property damage issue in 1989 in *REM Coal Co., Inc. v. Clark Equipment Co.*, 386 Pa.Super. 401, 563 A.2d 128 (1989) (en banc). In that case, the court held that no right of recovery exists where the only injury alleged is to the product itself, causing the plaintiff to incur repair and replacement costs, and there is no accompanying allegation that the alleged product defect caused some personal injury or harmed other property of the plaintiff. See also: *Eagle Traffic Control v. Addco*, 882 F.Supp. 417, 419 (E.D.Pa.1995); *Jones v. General Motors Corporation*, 428 Pa.Super. 544, 631 A.2d 665 (1993) (plaintiffs failed to state a cause of action against truck manufacturer in strict liability, since only damage alleged was to the truck itself.); and *Lower Lake Dock Co. v. Messinger Bearing Corp.*, 395 Pa.Super. 456, 577 A.2d 631, 634 (1990).

The factual scenarios presented to the courts in the above line of cases fall generally into two categories: those involving damage only to the product itself and those involving damage to some other property of the plaintiff. Wellsboro Hotel contends that its claims come within the latter category, based on its allegations that application of the SWEPCO caused the underlying masonry to crack, chip and flake (record document no. 22, exhibit "C").

Of the cases discussed above which apply Pennsylvania law, only a few involved allegations or findings that property other than the product itself sustained damage as a result of the alleged defect. Of those, *PNB* and *Hartford* are closest factually to the case *sub judice.* Although both cases were decided by the United States District Court for the Eastern District of Pennsylvania and both involved allegations that property other than the product itself was damaged as a result of the product's failure, the ultimate conclusions differ. In *PNB*, the district court concluded that the plaintiff bank could proceed under a claim of strict liability. In *Hartford*, the court concluded that the plaintiff could recover under a breach of warranty theory only. Although the facts of the cases differ slightly, in our assessment, the best explanation for the differing results was the Third Circuit's and Pennsylvania Superior Court's interim endorsement of the *East River* test. Among other things, the Supreme Court's *East River* holding refocused the test on whether the alleged product defect went more to the purchaser's commercial expectations than to the manufacturer's obligation to place only safe products in the stream of commerce. *Id.* 476 U.S. at 871, 106 S.Ct. at 2302. *Hartford* applied that focus, correctly in our view, to conclude that if the claim is in essence one arising from "failed economic expectations," i.e. expectations that the product would perform in the manner warranted, then tort recovery is inappropriate.

Applying that analysis to the facts before us, we conclude that Wellsboro Hotel's claim is, in essence, one for failed economic expectations. The gravamen of its claim is that, as with the failed roof in *Hartford*, the SWEPCO masonry coating did not perform as warranted—that not only did it fail to protect the hotel facade, it damaged the facade by causing the underlying masonry and stucco to chip, crack and crumble. This is more akin to the traditional concerns of contract law than it is to the traditional concerns of tort law, *East River*, 476 U.S. at 871, 106 S.Ct. at 2302, and on that basis, we conclude that plaintiff's strict liability claim cannot survive. We will, therefore, grant defendant's motion for partial summary judgment and enter judgment in its favor on Count IV of plaintiff's complaint.

Our ruling renders moot defendant's request for a determination from the court in advance of trial that its product was not "unreasonably dangerous" as a matter of social policy. *Shetterly v. Crown Controls Corp.*, 719 F.Supp. 385, 388 (W.D.Pa.1989).

\*    \*    \*    \*    \*    \*

An order will be entered consistent with this memorandum.