**2–J CORPORATION, t/a Dr. Feelgoode's**

v.

**William E. TICE, III, t/a Tice Construction Company and Jewell Building Systems, Inc.**

Civil A. No. 96–CV–0090.

United States District Court,
E.D. Pennsylvania.

May 7, 1996.

---

Peter G. Rossi, Peter A. Muhic, Cozen and O'Connor, Philadelphia, PA, for Plaintiff.

William E. Tice, III, t/a Tice Construction Co., Mine Run, VA, pro se.

John C. McNamara, Butler & McNamara, P.C., Philadelphia, PA, for Jewell Building Systems.

**MEMORANDUM**

JOYNER, District Judge.

This diversity[1] action arises out of the following facts, taken in Plaintiff 2–J Corporation (2–J), trading as Dr. Feelgoode's, fa-

---

1. The parties agree that Pennsylvania law governs this action. *Erie R.R. Co. v. Tompkins*, 304

U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

vor. In 1987, Defendant Jewell Building Systems (JBS) sold a "building in a box" through an agent to 2–J. Defendant William E. Tice III, trading as Tice Construction Company (Tice), was that agent and was also the entity that erected the building. Third parties installed the heating, electricity and plumbing. 2–J used the building as a warehouse, showroom and sales area. In 1994, the roof and exterior walls of the building collapsed and in the process damaged the goods stored in the warehouse. Accordingly, 2–J has brought this action against JBS and Tice in tort and in contract.

Today we address JBS's Motion for Summary Judgment on the counts against it, Counts IV, V and VI. In considering a motion for summary judgment, a court must consider whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. at 2514. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)).

## COUNTS IV AND VI FOR NEGLIGENCE AND PRODUCTS LIABILITY

■ JBS seeks to dismiss these tort claims on the basis that 2–J has only alleged economic loss. A principle known as the Economic Loss Doctrine provides that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865 (1986). Although the *East River* case was founded in admiralty law, the doctrine has been widely adopted into various states' common law due to its thorough analysis and persuasive reasoning. *Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110 (3d Cir.), *cert. denied*, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987).

■ Pennsylvania's Supreme Court has not had the opportunity to decide whether it would accept this doctrine, but both the Third Circuit and the Pennsylvania Superior Court have predicted that *East River*'s Economic Loss Doctrine will be adopted by the Pennsylvania Supreme Court. *Aloe Coal*, 816 F.2d at 119; *N.Y. State Elec. & Gas v. Westinghouse*, 387 Pa.Super. 537, 564 A.2d 919 (1989); *REM Coal Co. v. Clark Equip. Co.*, 386 Pa.Super. 401, 563 A.2d 128, 132 (1989). We too predict such a result, and accordingly, we ask here whether 2–J has alleged damage to more than the defective product itself, *i.e.*, to a person or other property. If 2–J has, then its tort claims may proceed.

■ 2–J alleges that it used the building as a warehouse and when the building collapsed, the goods that were stored there were damaged. Accordingly, 2–J declares, it is obvious that other property was damaged. This argument has great force on an initial reading. JBS, however, maintains that the Economic Loss Doctrine still precludes these tort claims because the goods that were damaged are not the type of "other property" contemplated by the Supreme Court when it ruled on *East River*.

JBS's argument is based in part on the holdings of opinions issued by courts sitting in Pennsylvania. The most closely analogous case is *Hartford Fire Ins. Co. v. Huls America, Inc.*, 893 F.Supp. 465 (E.D.Pa.1995). That case involved a similar situation where a roof collapsed and the property under the roof suffered water damage. This Court

ruled that "when faced with the question, the Pennsylvania Supreme Court will conclude that, at least within the commercial context, the phrase 'other property' does not include the type of property that one would reasonably expect to be injured as a direct consequence of the failure of the product at issue." *Id.* at 469.

To arrive at this conclusion, the Court examined the principals behind the Economic Loss Doctrine itself. In *New York State Elec. & Gas,* 564 A.2d at 925–26, the Superior Court held that when a defective product damages only itself, the proper remedy is found in contract law. This is because the damages "relate specifically to product quality and value as to which the parties have had the opportunity to negotiate and contract in advance." Similarly, the Supreme Court, in *East River,* stated that when a product injures other property or people, "the cost of an injury and the loss of time or health may be an overwhelming misfortune." In contrast, however, "when a product injures itself, the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or, as in this case, experiences increased costs in performing a service. Losses like these can be insured. Society need not presume that a customer needs special protection." 476 U.S. at 871–74, 106 S.Ct. at 2302–04.

The *Hartford* Court also relied on cases ruling that a plaintiff does not allege damage to other property if the defective product damaged property that was an integral part of the defective product. *See King v. Hilton–Davis,* 855 F.2d 1047 (3d Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 839, 102 L.Ed.2d 971 (1989); *Bailey Farms, Inc. v. NOR–AM Chem. Co.,* 27 F.3d 188, 191 (6th Cir.1994); *Ringer v. Agway, Inc.,* No. 89–2806, 1990 Westlaw 112091 (E.D.Pa. Aug. 2, 1990). Given this guidance, the *Hartford* Court held that the plaintiff "expected the roof to protect its building from water damage and to allow it to continue its business without interruption. The roof failed to do so. [Plaintiff's] remedy is in contract, and not in tort." 893 F.Supp. at 470.

2–J insists that *Hartford*'s interpretation of *East River* was an overly broad interpretation and that no other cases support its conclusion. However, other District Courts sitting in Pennsylvania have made similar rulings. In *Wellsboro Hotel Co. v. Prins,* 894 F.Supp. 170 (M.D.Pa.1995), a protective coating applied to the exterior masonry walls of a hotel began to degrade. The plaintiff alleged that other property was damaged because it was discovered that the coating had also damaged the walls themselves. The Court held that "the gravamen of [plaintiff's] claim is that, as with the failed roof in *Hartford,* the [defendant's] masonry coating did not perform as warranted—that not only did it fail to protect the hotel facade, it damaged the facade by causing the underlying masonry and stucco to chip, crack and crumble. This," the Court ruled, "is more akin to the traditional concerns of contract law than it is to the traditional concerns of tort law" and dismissed the tort claims. *Id.* at 175. *See also Ringer,* 1990 Westlaw 112091 (seed potatoes were infected with bacteria that contaminated other seed potatoes, the soil, machinery, buildings and equipment; Court held that damages of lost profits, increased costs and other consequential damages like cost of de-contamination only pleaded economic harm of loss of benefit of the bargain and so dismissed tort claims).

We find that the above case-law speaks to the issue we face today. 2–J's claim is that the building it purchased did not perform as a building should and therefore it suffered the loss of its building and also the loss of the goods that should have been protected by the building. These losses amount to a loss of the benefit of the bargain, and as the Third Circuit wrote, "the judgment of the Supreme Court was that the undesirable consequences of affording a tort remedy in addition to a contract-based recovery were sufficient to outweigh the limited interest of the plaintiff in having relief beyond that provided by the warranty claims." *King,* 855 F.2d at 1051.

We also find that these cases speak to an alternative argument raised by 2–J. It contends, and supports with an affidavit of its President, that it was never given the opportunity to negotiate the warranty issued by

JBS. For this reason, it contends, the policy behind limiting it to its contract remedy is not persuasive, because in reality, it entered into a contract of adhesion and should be favored by the law. Moreover, 2–J contends that because it purchased goods, it should be treated as a consumer and not a commercial entity and therefore not bound by the Economic Loss Doctrine.

■ We find that 2–J's arguments are not persuasive. First, the Economic Loss Doctrine's applicability is not dependent on a party actively engaging in warranty negotiations. Second, even though 2–J may not have had the opportunity to negotiate the actual warranty, as a commercial entity, it was well-equipped to negotiate the actual purchase, or if dissatisfied with its negotiations with JBS or Tice, to purchase from another company. Furthermore, the doctrine still has force in that it predicts that a commercial entity should not be protected by society when it can protect itself through warranty *or* insurance. *East River*, 476 U.S. at 871–74, 106 S.Ct. at 2302–04; *REM Coal*, 563 A.2d at 132.

Based on the above discussion and the arguments of the parties, we dismiss Plaintiff's tort claims.

*Count V for breach of contract*

■ Count V alleges a breach of contract between JBS and 2–J in that JBS allegedly breached both express and implied warranties that the warehouse was free from defects and safe for the purpose for which it was intended. JBS seeks summary judgment on this Count on the basis that the express warranty delivered with the building was limited to five years and had terminated more than a year before the building collapsed.

Second, JBS contends that the written warranty expressly disclaimed any implied warranties, including those of merchantability or fitness. JBS argues that the written warranty is valid and enforceable in Pennsylvania and is governed by the Uniform Commercial Code's Article Two, relating to the sale of goods. *New York State Elec. & Gas*, 564 A.2d at 924; *Cober v. Corle*, 416 Pa.Super. 191, 610 A.2d 1036, 1040 (1992).

2–J's only argument in opposition is that there are genuine issues of material fact that preclude a grant of summary judgment on Count V. First, 2–J points to the affidavit of its President, Joseph Mickley. Mr. Mickley avers that he does not recall receiving the written warranty that JBS attached as evidence to its motion for summary judgment, nor does he recall ever receiving any other written warranty statement.

We cannot accept this affidavit to create a genuine issue of material fact, however. Plaintiff's affidavit, first, does not expressly deny receipt of the warranty. It simply denies its President's *recollection* of receipt of the warranty. This does not create a genuine question whether the warranty was in fact delivered or received. Second, 2–J's Complaint alleges that "Defendant breached express and implied warranties." Complaint ¶ 32. If 2–J brings a claim under the express warranty, it cannot then resist summary judgment on the ground that such a warranty was never delivered. Because 2–J does not present any evidence going to show that the warranty was not delivered or received, we find no genuine question of fact as to this issue.

2–J also argues that there are many more issues of fact that preclude summary judgment, such as when the building was actually shipped or received, whether there were additional shipments, when construction began and ended, and what contracts or representations there were between JBS and Tice. We will not deny summary judgment based on these arguments.

Plaintiff, first of all, has not submitted any evidence to indicate that these issues are actually in dispute. For example, Defendant has proffered its Bills of Material Cover Sheet, which indicates that the warehouse was delivered on a single day in 1987. 2–J has not presented any evidence, by affidavit or otherwise, to contradict this evidence. Second, Plaintiff has not demonstrated that these questions of fact, even if they exist, are material. A question of fact can only prevent summary judgment if it is material, *i.e.*, if it could be outcome-determinative. Plaintiff has not provided any evidence or argument that would suggest that any of these issues

would in any way affect whether there was an express or implied warranty between 2–J and JBS or whether those warranties are still in force.

We find that there is no evidence to contradict JBS's evidence that the only warranties it issued had expired long before 2–J's claims arose. There is also no evidence to suggest that the warranty was not valid and enforceable. For this reason, we grant JBS's motion for summary judgment on this claim.

An appropriate Order follows.

### ORDER

AND NOW, this 7th day of May, 1996, upon consideration of the Motion of Defendant Jewell Building Systems, Inc. and response thereto and in accordance with the attached Memorandum, the Motion is hereby GRANTED on Counts IV, V and VI in favor of Defendant Jewell Building Systems, Inc. and against Plaintiff.